131 So.2d 256 (1961)
Cole McANDREWS
v.
Alvin ROY.
No. 5355.
Court of Appeal of Louisiana, First Circuit.
May 22, 1961.
Rehearing Denied June 30, 1961.
*257 Kantrow, Spaht, West & Kleinpeter, Baton Rouge, for appellant.
Dodd, Hirsch, Barker, Avant & Wall, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, JONES, HERGET and LANDRY, JJ.
JONES, Judge.
This is a suit in damages for the invasion of the right of privacy. The trial court awarded the plaintiff the sum of $250 and plaintiff has appealed to this court seeking an increase in the amount of the award. Defendant has answered the appeal and moved that the judgment be reversed and plaintiff's suit dismissed. Plaintiff filed an opposition to the answer, contending that the appellee cannot, by answer to the appeal, seek a reversal of the judgment rendered against him in the lower court. This contention is without merit. See Code of Practice, Articles 591, 592 and 888; also Ferguson v. Parr, La.App., 85 So.2d 117 and Breaux v. Laird, 230 La. 221, 88 So.2d 33.
While the record contains conflicting testimony as to several material points in the case, briefly, the facts are substantially as follows:
Plaintiff, Cole McAndrews, filed suit in the District Court alleging that on Tuesday, April 7, 1959, his picture was published in the Baton Rouge State Times and Morning Advocate newspapers by the defendant, Alvin Roy, for the purpose of advertisement. He contends that this was done without his permission and that such publication constituted an invasion of his privacy.
Defendant, Alvin Roy, operates what is commonly referred to as a health studio in the City of Baton Rouge. In order to advertise and promote his business he would take pictures of certain of his students shortly after they began the course and would take a second picture of the student when he had completed the course. These pictures would then be used in newspaper advertisements in the familiar "before" and "after" sequence, with the text of the advertisement indicating that a course at the defendant's studio was responsible for the physical improvement designated in the pictures and that similar results could be obtained by others.
Defendant, Alvin Roy, readily admitted that he took the pictures of the plaintiff and placed the advertisements in the newspapers. He, however, contends that the pictures were taken with the consent of the plaintiff and that plaintiff knew they were to be used in newspaper advertisements. This is denied by the plaintiff who testified that the pictures were taken solely for his use and information so that he could see the progress he was making in his body building course.
Cole McAndrews is a life-long resident of Baton Rouge and has been an employee of Esso Refinery for the last fifteen years. It is undisputed that when the plaintiff arrived at his work on the day his pictures were published in the papers by defendant that copies of the advertisements were prominently posted in various places in the building where he worked and that many of his co-workers "kidded" him about the *258 pictures and called him such names as "muscle-head", "muscle-brain" and "muscle-body". According to the testimony of the plaintiff, as well as two of his co-workers, this name calling was almost constant for many days after the advertisements were published and it was even going on at the date of the trial which was some eighteen months thereafter. The plaintiff's testimony is to the further effect that as a result of this he was greatly humiliated, embarrassed and harassed.
That Louisiana recognizes the right of privacy cannot be denied. This court, in the case of Hamilton v. Lumbermen's Mutual Casualty Co., 82 So.2d 61, reviewed the early jurisprudence of this state wherein this right was recognized. Such right has been variously defined as "the right to be let alone" and the "right to live one's life in seclusion, without being subjected to unwarranted and undesired publicity." See page 63 of the Hamilton case, supra. Of course, if authorization is given for the publication, then there is no invasion of the right of privacy. This brings us to the first issue to be resolved, viz., did the plaintiff in this case give authorization for his pictures to be published at the time they were published by the defendant. Admittedly, defendant took the pictures and had them published. He testified that the plaintiff came to his health studio in 1949 or 1950 and enrolled as a student. Plaintiff, on the other hand, was positive that he did not go to this studio as a student until 1956 or 1957. The defendant, however, testified that he was not in his Baton Rouge studio at all during those years because he was in other points around the country where he had other studios and the particular studio in Baton Rouge was being run by an agent of his at that time. We believe a fair appraisal of all of the testimony on this point is that plaintiff McAndrews actually enrolled as a student in either the latter part of 1949 or the early part of 1950.
The record reflects that the plaintiff was about 24 years old at the time of his enrollment in the course and was a good, hard working student and showed promise of outstanding development. Defendant accordingly told the plaintiff that he wanted to take his picture so that if he continued to develop well he could take another picture at the completion of the course and use them in the paper. The first, or "before", picture was posed with the plaintiff dressed in a pair of baggy shorts, standing in a very casual and relaxed position. Some time later, the testimony is in conflict as to how many weeks later, the second, or "after", picture was posed. This time the subject was dressed in a pair of neat and close-fitting trunks, was standing erect, with all his muscles tensed or flexed. Plaintiff testified that the second picture was taken after a period of hard exercise which fact resulted in the muscles being "pumped up" so that they appeared to be larger. In light of the above, it is obvious plaintiff knew that he was posing for pictures for some reason other than his own information. Otherwise, there would have been no reason for having used the baggy shorts in the first picture. He admitted they were taken off another man and given to him just for the purpose of the picture. Defendant testified that plaintiff specifically gave his consent for the pictures to be used in the paper and in this he is partially corroborated by one of his employees. Plaintiff has denied that he gave this consent. Even though the testimony leaves much to be desired with reference to the specific consent in so many words, this court is of the opinion that the conduct of the plaintiff makes it abundantly clear that he tacitly consented to having his pictures taken for the purpose of advertising.
Having found that the defendant had the consent of the plaintiff to use the pictures, the next question to be resolved is whether such permission remained effective indefinitely. Defendant testified that in the year 1959 he was looking over some old pictures and found those of the plaintiff. He remembered that he had never used them and decided to do so in the form of *259 an advertisement which was run in the aforementioned Baton Rouge papers on April 7, 1959. This was, of course, approximately ten years after the pictures had been taken. Defendant testified that he made no effort to contact the plaintiff to ascertain if it was still all right for him to use the pictures. He acknowledged that it would have been a simple matter to have picked up the telephone and called the plaintiff but this he did not do. He readily admitted that he now realizes that he made a mistake by not calling the plaintiff in order to get permission for using the pictures at such a late date. He admitted that people change over a period of ten years and what might have been agreeable to a young man of 24 might not have been agreeable to the same man at the age of 34. We might further add that most people's physique changes over a period of ten years.
Defendant's counsel urge in brief that it was incumbent upon the plaintiff to revoke the consent he had previously given if he no longer desired that the pictures be used. We cannot agree with this position. The pictures were taken ten years before their use and at a time when, according to the record, defendant's business was just getting started. He testified that he would take these pictures and as soon as he had enough money to pay for an advertisement he would use them. In the years between 1949 and 1959 defendant's business prospered and he had studios throughout the country. We feel that it was reasonable for plaintiff to assume that since the pictures were not used shortly after they were taken that the defendant had decided not to use them. The pictures were, of course, to be used for advertising defendant's business in order to get new customers and he stood to benefit financially from said use. The plaintiff received nothing. The consent he gave was without any consideration whatsoever. Defendant admitted he should not have used the pictures without again contracting the plaintiff to see if he was still willing that they should be used and we feel that this is the best evidence of the fact that he should have done so. We are of the opinion that it would be placing an unreasonable burden on the plaintiff to hold that he was under the duty to revoke a gratuitous authorization given many years before. As defendant was the only person to profit from the use of the pictures, then, under all the circumstances, it seems reasonable that he should have sought the renewal of the permission to use the old pictures. Thus, the publication of the hereinabove described pictures of the plaintiff constituted an invasion of his privacy and subjected him to embarrassment and humiliation.
The trial court awarded the plaintiff the nominal sum of $250 as damages. The record indicates that petitioner was subjected to ridicule by his fellow workers and that for many months after the publication of these pictures he was called "muscle-brain", "muscle-head", "muscle-bound" and similar names and as he testified "everything except my right name since that happened and it is still continuing until right now." The record indicates that this takes place not only among the plaintiff's co-workers but in the presence of his supervisors and his family. We feel that under all the circumstances plaintiff is entitled to more than nominal damages. In the Hamilton case, supra, this court awarded $3,000 for the unauthorized use of the plaintiff's name in a newspaper in connection with an automobile accident in which the plaintiff was injured. However, in the Hamilton case there was a forceful dissent to the effect that not more than $500 should have been allowed.
There was considerable testimony taken on the trial of this case relative to the defendant's ability to respond in damages. It is shown that he has met with financial reverses in recent years resulting in his losing all of his studios except the one he operates in the City of Baton Rouge. Our appreciation of the testimony is that while he is not in an impecunious state his finances are somewhat limited.
*260 After due consideration of all these factors, we feel that an award of $1,000 is adequate, and the judgment of the District Court will be increased to said amount.
Amended and as amended affirmed.
HERGET, Judge (dissenting).
Undeniably, in the case of Hamilton v. Lumbermen's Mutual Casualty Co., 82 So.2d 61, this Court has recognized an action for the violation of the right of privacy and in adopting the definition supplied by counsel for appellee in that case, we defined same by quoting with approval:
"It has been defined as `the right to be let alone' and as `the right to live one's life in seclusion, without being subjected to unwarranted and undesired publicity.' According to another definition, it is `the right to live without unwarranted interference by the public about matters with which the public is not necessarily concerned.' * * *"
On the trial of this case Plaintiff testified the pictures published by Defendant were taken solely for the purpose of demonstrating to himself the improvement he had shown as a result of his exercises at Alvin Roy's and that he at no time consented to their publication for the purpose of advertising the merits of Alvin Roy's studio. He further testified the pictures were taken in 1956 or 1957. Defendant and his witness, Humphries, related that Plaintiff enthusiastically took part in the making of the pictures and consented to the use thereof in advertisement by Defendant. The testimony of Defendant and Humphries in this respect is corroborated by the fact in the "before" picture large, oversize trunks were obtained and used by Plaintiff with the assumption of an unflattering pose depicting his physique; whereas in the "after" picture he was attired in form-fitting trunks and assumed a very flattering posture demonstrating his musculature. This picture can in no way be characterized other than as highly complimentary to his physical appearance. Defendant further testified, and was corroborated by Humphries in this, that the pictures were made in 1949 or 1950. The majority in its opinion has accepted the testimony of Defendant that the pictures were taken by Defendant in 1949 for the avowed purpose of publishing as an advertisement to demonstrate the merits of Defendant's business and that Plaintiff consented to said publication at that time. Despite the fact the Court so held, it rationalizes that because of the passage of more than ten years since the date of the taking of the pictures and the consent to the publication thereof by Plaintiff, it was encumbent upon Defendant to again obtain the consent of Plaintiff before publishing same some ten years later. In its finding the Court concludes that Defendant himself recognized such obligation when "He readily admitted that he now realizes that he made a mistake by not calling the plaintiff in order to get permission for using the pictures at such a late date." In my opinion this observation or conclusion by the Defendant is similar to that expressed by an individual following an automobile collision to the effect that the accident was his fault. In construing the effect to be given to such statements the Courts have held that same expressed simply a conclusion and not a fact and do not preclude the individual from negating such a conclusion by factually showing otherwise on the trial of the case. Santiago v. Brondum et al., La.App., 75 So. 2d 565; St. Pierre v. Dufresne, La.App., 73 So.2d 30; Coleman v. Smith, La.App., 63 So.2d 171, and Phillips v. Stevenson, La. App., 57 So.2d 418.
The inescapable fact proven on the trial of the case is that Plaintiff gave Defendant his consent for the publication of the pictures for advertisement purposes and the question of whether or not additional consent for the publication at a later date must be obtained is for the Court to decide.
There is no question but that the pictures taken of Plaintiff were in no way touched up, nor was any trick photography used in making same, so that the pictures depict *261 Plaintiff in the poses assumed voluntarily by him. An examination of the photograph of Plaintiff in the "after" picture does not depict Plaintiff in an unnatural, unflattering or uncomplimentary attitude but designedly, on the other hand, shows him undoubtedly to be a physical specimen well worth emulating. It is this picture which no doubt prompted his fellow workers in a jocular show of good-natured kidding to apply to Plaintiff the sobriquets "muscle-brain", "muscle-head", "muscle-bound", which he found to be distasteful. As he alleged in his petition and as the evidence shows these cognomen were applied not by his enemies but by "numerous friends and co-workers and/or employees."
Though neither Plaintiff or Defendant evidently gave thought to the reception to be accorded to the publication of the pictures by Plaintiff's fellow employees, there is not one whit of testimony in the record to show that the publication by Defendant of the pictures was with any intent of humiliating or embarrassing Plaintiff. In fact, the evidence shows that Plaintiff and Defendant were close friends, having grown up in the same neighborhood and, furthermore, the evidence shows that Plaintiff's mother was and is presently one of the participants in Alvin Roy's health courses. This fact, in itself, is sufficient to demonstrate that Defendant had no intent to cause damage to the Plaintiff by the use of the pictures in his advertisement.
There is general agreement among the secondary authorities that consent to publication by the plaintiff operates as a bar to his right to recover for invasion of his privacy. See Prosser on Torts, page 613, Second Edition. Harber and James, page 398, Restatement of Torts, Vol. 3, 2d 583; 53 C. J. S. Libel and Slander §80, "Where plaintiff, himself, communicated or, by his acts, caused the communication of the libelous matter to a third person or persons, he cannot recover therefor, and, if he consented to, or authorized the publication complained of, he cannot recover for any injury sustained by reason of the publication. * * *"
I find very little authority on the question of what constitutes consent, though Prosser says "The privilege is limited by the scope of the assent apparently given, and consent to one form of publication does not confer a license to publish to other persons, or in a different manner." Undeniably, and without question, Plaintiff in this case consented to the publication of these pictures in the form of publication and I believe did so readily, agreeably and enthusiastically.
In Harper and James on The Law of Torts, Vol. 1, Section 5.17 at pages 398 and 399, we find:
"Plaintiff's consent to publication; Provocation. Ordinarily the consent of the plaintiff to the publication of defamatory matter, or to the presence of a third person when he had reason to expect such a publication about him, is a complete bar to any action against the publisher. This is the application of the general principle of the law of torts that consent to intended invasions of the plaintiff's interest is not a wrong as to him. The consent, of course, need not be in express words. An apparent assent may, here as elsewhere, be as complete a defense as an express consent. `Whether words or conduct are to be interpreted as expressions of assent to the publication of defamatory matter is to be determined by the reasonable inferences from the conduct in the light of circumstances surrounding it at the time.'"
If I interpret the majority opinion correctly, it is to the effect that if the publication had been made in 1956 or 1957 as testified to by Plaintiff, or in 1949 or 1950 as testified to by Defendant, Plaintiff would not have had a cause of action for the reason that he had consented to the publication. There is nothing in the record to show that if the publication had taken place on either *262 of the above-mentioned dates the reception thereof would not have been met by his coworkers similarly to that accorded same upon the actual publication in 1959. Thus, if the invasion of his privacy would have occurred in 1959, likewise it would have occurred in 1949. The passage of time of ten years does not serve the purpose of creating a cause or right of action but could have effect only of possibly increasing quantum to Plaintiff upon a finding of unauthorized publication. Plaintiff himself recognized the necessity of showing that the publication was made without his consent for, in his petition, he makes the allegation that Defendant, without his knowledge or consent, inserted in the newspaper the pictures taken of him.
In this case, as in all civil cases, the burden of proof rests upon the Plaintiff to prove his case by a preponderance of evidence. Being of the opinion that the Plaintiff has failed to carry such burden, I respectfully dissent.