**Parma International v. Bartos**
**Case No. 89CA004573**
**Lorain County, (9th)**
**Decided February 7, 1990**
[Cite as 1 AOA 364]

*Keith A. Savidge and Robert Edelstein, Attorneys at Law, 800 Baker Bldg., 1940 E. Sixth St., Cleveland, OH 44114 for plaintiff.*

*William F. Kolis, Jr., Attorney at Law, 1144 W. Erie Ave., P. O. Box 840, Lorain, OH 44052 for Defendant.*

BAIRD, J.

This cause came before the trial court upon the appeals of Parma International, Inc., and the cross-appeal of Steven Bartos from the trial court's adoption of the referee's recommendations. We affirm in part and reverse in part.

Before setting forth the facts of this case, we initially note that we are confined in our review to the findings of fact established by the referee. Although both parties refer to the transcript of the hearing before the referee, it is apparent from the record that the trial court did not have the transcript before it when it adopted the referee's recommendations. Since our review is limited to the material that was before the trial court, this court is precluded from looking behind the findings to determine whether they are supported by competent evidence. Thus we are limited to ascertaining whether the factual findings sufficiently supported the judgment.

At age 13, Steven Bartos, appellee/cross-appellant, began manufacturing model slot car bodies and accessories and selling them to other slot car enthusiasts. In 1978, Bartos became interested in radio-controlled miniature race cars and began to race them professionally on a local level. He developed a reputation for being an excellent racer and a designer of these model cars. He eventually affiliated himself with a racing team sponsored by the appellant cross-appellee, Parma International, Inc. (Parma).

Parma is a corporation that manufactures and distributes model racing car accessories. In May of 1981, Ken MacDowell, owner and president of Parma, hired Bartos as a research and development manager. Bartos signed employment contracts in 1981, 1982, and 1985. Each contract was for a one-year term and each contained a paragraph entitled CONFIDENTIALITY AND NON-COMPETITION, which reads:

> "The employee shall not disclose to others than the President and employees, of the Corporation designated by the President, either during or after the Term, any trade secrets or other confidential information obtained by him in connection with his employment by the Corporation. Employee shall not, for his own account or any other, as investor, proprietor, officer, director, employee or in any other capacity (i) during a period of five (5) years commencing upon the termination of the Term, carry on or engage or invest in any business similar to that being conducted by the Corporation at the date of such termination, and (ii) during a period of three (3) years commencing upon the termination of the Term, solicit customers of the Corporation or any subsidiary who were such during the Term; provided, however, that the foregoing obligations shall respectively be limited to those geographical areas in which, and those customers with whom, the businesses of the Corporation and its subsidiaries were actually being conducted during the last two (2) years of the Term."

While working for Parma, Bartos continued to successfully race the radio-controlled cars and won the world championship in that sport in 1984 with a car produced by Parma. During his six years with the company, Bartos was involved in every facet of the industry from the designing of the cars and their parts to advertising and promoting them. During this

same time period, Parma grew from a cottage industry to a $5,000,000 a year business.

In 1986, Bartos left Parma over a dispute he had with Parma's president. Once he left Parma, he set up a business in his home in Amherst, Ohio, called Bud's Racing Products. The products that Bartos sells are the same type of products that Parma sells, only on a smaller scale. Further, Bartos sells his products to some of the same distributors as does Parma.

Parma filed a complaint against Bartos seeking enforcement of the restrictive covenant. Bartos counterclaimed for appropriation of his name and likeness. A hearing on the enforceability of the covenant was held before a referee on September 18, 1987. The referee found that Parma failed to identify any trade secrets that it had developed and Parma also failed to prove that Bartos possessed any trade secrets. The referee further found that the restrictive covenant did not contain any limitations as to geographic area. The referee recommended that:

"* * * the Plaintiff be granted a preliminary and permanent injunction against the Defendant from carrying on or engaging in, or investing in any business similar to that conducted by the Plaintiff for a period of one (1) year from the date of this Judgment and within a radius of twenty five (25) miles of the Plaintiff's principal place of business at the time of the commencement of the action."

Prior to the adoption of the referee's recommendations, Parma moved for summary judgment on Bartos's counterclaim. Bartos responded to the motion. On April 6, 1989, the court affirmed the referee's recommendations and granted summary judgment to Parma on the counterclaim.

Parma appeals from the trial court's adoption of the referee's recommendations for a modified enforcement of the covenant. Bartos cross-appeals, alleging that no restrictions should have been placed upon his future employment and that the trial court erroneously entered summary judgment upon his counterclaim.

### PARMA INTERNATIONAL INC.'s ASSIGNMENT OF ERROR

"The limitations imposed by the trial court in this case are not sufficient to safeguard the interests of appellant, and the facts support a non-restricted enforcement of the covenant not to compete."

Parma claims that the restrictive covenant contained in each of Barto's employment contracts should have been fully enforced by the trial court. A restrictive covenant is deemed to be reasonable if it is narrowly tailored to protect the employer, does not impose undue hardship on the employee, and does not injure the public good. *Raimonde* v. *Van Vlerah* (1975), 42 Ohio St. 2d 21, 26. The employer has the burden to show that special circumstances exist that give rise to a protectable business interest. Such circumstances include the situation where, during his employment, the employee had extensive contact with his former employer's customers or was privy to trade secrets or confidential information. *Frank, Seringer & Chaney, Inc.* v. *Jesko* (Dec. 6, 1989), Lorain App. Nos. 4577, 4613, unreported.

Apparently, Parma claims that the restrictions placed upon Bartos are reasonable in light of the trade secrets he acquired during the course of his employment. Formulas, patterns, devices or compilations of information qualify as trade secrets where they are known only to the employers and employees, are unique in the trade, give the employer a competitive advantage, and are protected by substantial security measures. *Wiebold Studio, Inc.* v. *Old World Restorations, Inc.* (1985), 19 Ohio App. 3d 246, 248. The trial court found that Parma failed to identify any specific trade secrets and failed to prove that if trade secrets did exist that Bartos possessed them when he left the company.

The trial court, however, determined that Parma did have a legitimate business interest, worthy of protection. A covenant not to compete that unreasonably restricts the employee's post-employment activities will be enforced only to the extent necessary to protect the employer's legitimate interests. *Raimonde* v. *Van Vlerah, supra* at 25-26. The covenant restricted Bartos from working or investing in a similar business for a period of five years and barred him from solicitating customers for a period of three years. Instead of enforcing the covenant as originally drafted, the court restricted Bartos from conducting his business for one year. The restriction was justified on the theory that Bartos was a key employee and that a one-year bar on competition would give Parma an adequate amount of time to find a replacement and recover from the loss of an

important employee.

Recent decisions reflect the rationale that where the employee's services are special, unique, or extraordinary, the court will uphold some type of restriction even in the absence of a finding that the employee possessed trade secrets. Eg. *Purchasing Assocs.* v. *Weitz* (1963), 13 N.Y. 2d 267, 196 N.E. 2d 245, 248; *Columbia Ribbon & Carbon Mfg. Co., Inc.* v. *A-1-A Corp.* (1977), 44 N.Y. 2d 496, 369 N.E. 2d 4, 6. There is ample evidence in the record that Bartos, as research and development manager, provided Parma with special services, which resulted in innovations in the design of the model cars, improvements in the manufacture of parts and accessories, and more advertising opportunities. Thus, the trial court's one-year limitation provided Parma with adequate time to replace Bartos and to recover from the loss of his services.

Parma complains that the referee erroneously found that the restrictive covenant did not contain any limitations as to geographic area. The portion of the covenant at issue reads:

"* * *the foregoing obligations shall respectively be limited to those geographical areas in which, and those customers with whom, the businesses of the Corporation and its subsidiaries were actually being conducted during the last two (2) years of the Term."

Parma claims that the evidence presented at the hearing before the referee supports its contention that the covenant did have adequate geographical restrictions capable of enforcement. Because we must look only to the findings of the referee, we are compelled to uphold the conclusion rendered by the court that no limitations as to geographic area are present. Thus we affirm the trial court's modification of the covenant to a time period of one year and to a geographic area of twenty-five miles from Parma's principal place of business. Parma's assignment of error is not well taken.

### STEVEN BARTO'S
### ASSIGNMENT OF ERROR I

"The trial court erred in issuing a one-year, 25-mile-radius injunction against Mr. Bartos under an employment covenant not to compete, where Parma failed to demonstrate any trade secrets or confidentiality necessitating the protection of an injunction."

In his cross-appeal, Bartos contends that the trial court erred in enforcing a modified noncompetition agreement. Bartos argues that because Parma failed to show that he left it armed with any confidential information or trade secrets, Parma did not have any legitimate business interests worthy of protection by means of a restrictive covenant. As we discussed earlier in this opinion, where the employee's services are unique, special, or extraordinary, the covenant may be enforced, if reasonable, even if the employment did not involve access to trade secrets or confidential information. *Purchasing Assocs., Inc.* v. *Weitz*, *supra* at 248, 249. We affirm the restrictive covenant as modified by the lower court, for it provides Parma with sufficient time to recover from the departure of Bartos, who was integral part of the company. Barto's first assignment of error is not well taken.

### STEVEN BARTO'S
### ASSIGNMENT OF ERROR II

"The trial court erred in granting Parma's motion for summary judgment where Parma demonstrated no legal right to use Mr. Barto's likeness and achievements for advertising and promotion following termination of his employment, and where there existed a genuine issue of material fact as to damages caused by Parma's wrongful use of Mr. Barto's likeness and achievements."

Parma filed a motion for summary judgment on Barto's counterclaim, which sought $100,000 in damages for the appropriation of Barto's likeness and achievements in Parma's advertising brochures and packaging. The record reveals that a month after Bartos began working for Parma, his picture began to appear in various advertisements for Parma's products. In 1984, Bartos won the world championship of radio-controlled car racing with a model car, the Euro Panther, that he designed for Parma. He assisted in the artwork and layout of the advertisement for the Euro Panther. The advertisement included a picture of Bartos holding a trophy in one hand and the Euro Panther car in the other. To the right of the picture was the following:

"Bud Bartos took a box stock Euro Panther to the Winners Circle at the World Championships; YOU COULD DO THE

SAME!"

A similar picture and similar wording were used in the packaging of the car.

Ohio recognizes a cause of action for appropriation of name or likeness:

> "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy, and the use or benefit need not necessarily be commercial."

*Zacchini* v. *Scripps-Howard Broadcasting Co.* (1976), 47 Ohio St. 2d 224, paragraph one of syllabus, reversed on other grounds (1977), 433 U.S. 562.

The action is premised upon the recognition that an individual has an interest in the exclusive of his own identity, insofar as it is represented by his name or likeness, and insofar as the use may be of benefit to him or others. Restatement of Law 2d, Torts (1977), 380, Section 652C, Comment *a*. Liability is only present when the defendant uses the plaintiff's name or likeness to obtain for himself the benefits normally associated with the plaintiff's identity or reputation. *Id.* at Comment *c*.

Parma moved for summary judgment, claiming that Bartos consented to the use of his name, picture, and accomplishments in Parma's literature and packaging. Parma argues that because Bartos suggested the use of his picture and assisted in the layout of the artwork for the advertisement of the Euro Panther, he impliedly consented to the use of his name or likeness. In response, Bartos contends that he did not expressly consent to the use of his name or picture. Further, he states a question of fact remains as to whether his act of designing some of Parma's advertising literature amounted to implied consent for the use of his name achievements, and picture on advertisements and packaging once he was no longer working for Parma, especially in light of a letter that was sent to Parma and authored by Barto's attorney. The letter, dated May 20, 1986, reads:

> "In any event, Mr. Bartos, expects that your company will not violate his name and image through its continued use. You are hereby instructed that you shall forewith (sic) stop all advertising containing the name or image of Mr. Bartos and you will

no longer sell any products which show the name or image of Mr. Bartos on either the product of (sic) the packaging.

"This prohibition against any further use of the name and image of Mr. Bartos is meant to apply immediately to any current advertising campaign and to any and all items that are presently in inventory."

Parma admits that Barto's name and likeness were still appearing on packaging and advertising literature over a year after it received the letter.

The cause of act of appropriation is a species of the tort of invasion of privacy. If there is consent to a particular conduct, the consent will prevent that conduct from constituting an actionable invasion. Prosser and Keeton, Torts (5 Ed. Keeton Ed. 1984) 867, Section 117. Consent, however, can be limited in scope and duration.

In *Colgate-Palmolive Co.* v. *Tullos* (C.A. 5, 1955), 219 F. 2d 617 the appellee had been advertising cosmetics for ten years and had a state-wide reputation. When the appellee became employed with Palmolive, she consented to the use of her picture in connection with her employment. Palmolive terminated the appellee's employment. It then ran an advertisement for a type of hair coloring that included a picture of the appellee and, above the picture, the name of someone else. The court held that, upon her termination, the appellee's consent to the use of her name or likeness ceased. *Id.* at 618. Likewise in *McAndrews* v. *Roy* (La. App. 1961), 131 So. 2d 256, the court held that an operator of a health studio could not use "before and after" pictures of a former student, which were ten years old, when the operator did not seek permission to use the pictures. At one time, the former student had impliedly consented to use of the pictures, when he posed for them. The health studio operator did not use the pictures for advertising until ten years later. The court held that the operator of the health studio have renewed the permission to use the old pictures and his failure to do so constituted an invasion of privacy. *Id.* at 259.

In the instant case, the order granting summary judgment cited only the provisions of Civ. R. 56. Thus, we have no information as to the trial court's view of the case, and this court's view is that questions of fact remain as to whether Bartos's conduct in helping to arrange the layout of the advertisement, which

included his name, picture and achievements, amounted to implied consent to the continued use of his name and likeness in other advertisements and product packaging. If he did tacitly consent, further questions exist as to whether his permission to use his name and likeness ended upon his departure from Parma or ended upon his explicit revocation of consent contained in the letter sent to Parma in 1986. Where genuine issues of material fact remain, a summary judgment is improper. See *Temple v. Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327. Bartos second assignment of error is well taken.

We affirm the trial court's modification of the restrictive covenant, but reverse on the trial court's grant of summary judgment on Bartos's counterclaim for appropriation. This case is remanded to the trial court for further proceedings consistent with this opinion.

The Court finds that there were reasonable grounds for this appeal.

We order that a special mandate issue out of this court, directing the County of Lorain Common Pleas Court to carry this judgment into execution.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E).

CACIOPPO, P. J., QUILLIN, J., Concur