Fuld, J.
This appeal, here by our leave, requires us to determine jjidiether the covenant made by the defendant not to compete with the plaintiff is enforcibleT'
The defendant Morton Weitz was engaged for some years in data processing work in New York City as an employee of Grayson-Bobinson Stores, a retail chain. In April of 1961, he and two other men formed a partnership known as Purchasing Associates to carry on the business of purchasing routine supplies for business organizations on a fee basis. About a month and a half later, on June 6, a contract was executed between that partnership and Associated Sales Analysts, Inc., whereby the former agreed in terms to “sell” its assets to the plaintiff, a newly formed wholly owned subsidiary of Associated, which was to engage, among other things, in the data processing business. Under this contract, the defendant and his copartners were to receive all of the net profits realized by the plaintiff in the years 1962, 1963 and 1964 as payment for their interests in the former partnership.
*270 On June 13, 1961, the defendant entered into an employment contract with the plaintiff. By its terms, the plaintiff agreed to employ the defendant for two years, beginning October 1, 1961, at an annual salary of $18,000, plus $2,000 a year for expenses, and, for his part, the defendant agreed that for a period of two years from the date of the termination of his employment he would not “ within a 300-mile radius ” of New York City “directly or indirectly own * * * be employed or participate in the management, operation or control of, or be connected in any manner with, any business of the type and character of business engaged in by [his employer] * * * at the time of such termination ”. In October of 1962, following a disagreement with his employer, the defendant resigned?from his job and thereafter organized Datamor Associates, Inc., which is also engaged in the data processing business.
The plaintiff thereupon brought this action to compel compliance with the terms of the restrictive covenant and to enjoin the defendant from engaging in such data processing business within the area and for the period specified in the covenant. Its complaint, neither describing the covenant as one ancillary to the “ sale ” of a business nor characterizing the defendant’s services as “ special, unique or extraordinary,” alleged that the defendant, as a part of his services, “ learned the operation and conduct of the business of the plaintiff,” “ became familiar with all of the trade secrets of [the] plaintiff and of [its] business methods ’ ’ and ‘1 intends to use the knowledge, * * * methods and trade secrets ’ ’ thus acquired ‘ ‘ in violation of the restrictive covenant contained in [the] agreement The defendant not only denied these allegations but questioned the enforcibility of the covenant.
Following a trial without a jury, the court, although holding that “ there arefffd trade secrets involved^ ’ granted the plaintiff the relief sought. It was the court’s view that the restrictive covenant was enforcible on two grounds — first, that the defendant’s services were “ ¿Special, unique and of extraordinary character"’!” and, second, that the covenant was made “in connection with the sale of a business ”. The Appellate Division affirmed the judgment and, as already noted, we granted leave to appeal.
*271 At one time, a covenant not to compete, basically an agreement in restraint of trade, was regarded with high disfavor by the courts and denounced as being “ against the benefit of the commonwealth”. (Colgate v. Bacheler, 2 Cro. Eliz. 872; see Diamond Match Co. v. Roeber, 106 N. Y. 473, 479-484; Wood v. Whitehead Bros. Co., 165 N. Y. 545, 550-551; see, also, 5 Williston, Contracts [rev. ed., 1937], §§ 163A-1635.) It later became evident, however, that there were situations in which it was not only desirable but essential that such covenants not to compete be enforced.
Where, for instance, there is a sale of a business, involving as it does the transfer of its good will as a going concern, the courts will enforce an incidental covenant by the seller not to compete with the buyer after the sale. (See, e.g., Wirth & Hamid Fair Booking v. Wirth, 265 N. Y. 214; Hachenheimer v. Kurtzmann, 235 N. Y. 57; Diamond Match Co. v. Roeber, 106 N. Y. 473, supra; see, also, 6A Corbin, Contracts [1962], § 1385; 5 Williston, Contracts [rev. ed., 1937], § 1641.) This rule is grounded, most reasonably, on the premise thatfa"buyer of a business should be permitted to restrict his seller’s freedom of trade so as to prevent the latter from recapturing and utilizing, by his competition, the good will of the very business which he transferred for value3 (See, e.g., Lynch v. Bailey, 300 N. Y. 615, affg. 275 App. Div. 527; Diamond Match Co. v. Roeber, 106 N. Y. 473, supra; see, also, 6A Corbin, Contracts [1962], § 1385.) This court has applied the “ sale of a business ” rationale where an owner, partner or major stockholder of a commercial enterprise has sold his interest for an immediate consideration which was, in part, payment for the good will of the business, in terms of “ continuity of place ” and “ continuity of name ”. (See Lynch v. Bailey, 300 N. Y. 615, affg. 275 App. Div. 527, supra; Wirth & Hamid Fair Booking v. Wirth, 265 N. Y. 214, supra; Hachenheimer v. Kurtzmann, 235 N. Y. 57, supra; Diamond Match Co. v. Roeber, 106 N. Y. 473, supra; see, also, Goldstein v. Maisel, 271 App. Div. 971.) The sole limitation on the enforcibility of such a restrictive covenant is that [the restraint imposed be “ reasonable,3}’ that is, not more extensive, in terms of time and space, than is reasonably necessary to the buyer for the protection of his legitimate interest in *272 the enjoyment of the asset bought. (See Lynch v. Bailey, 300 N. Y. 615, affg. 275 App. Div. 527, supra; Diamond Match Co. v. Roeber, 106 N. Y. 473, 481-486, supra; Dunlop v. Gregory, 10 N. Y. 241; see, also, 5 Williston, Contracts [rev. ed., 1937], §§ 1636, 1638-1639, 1641; 6A Corbin, Contracts [1962], §§ 1386-1387, 1391.)
Also enforcible is a covenant given by an employee that he will not compete with his employer when he quits his employ, and the general limitation of “ reasonableness ”, to which we have just referred, applies equally to such a covenant. (See, e.g., Interstate Tea Co. v. Alt, 271 N. Y. 76; McCall Co. v. Wright, 198 N. Y. 143, 149-151; see, also, 6A Corbin, Contracts [1962], pp. 94-97.) However,¿since in the ease of such a covenant the element of good will, or its transfer, is not involved and since there are powerful considerations of public policy which militate against sanctioning the loss of a man’s livelihoocythe courts have generally displayed a much stricter attitude with respect to covenants of this type. (See Lynch v. Bailey, 300 N. Y. 615, affg. 275 App. Div. 527, supra; Murray v. Cooper, 268 App. Div. 411, affd. 294 N. Y. 658; see, also, 5 Williston, Contracts [rev. ed., 1937], § 1643.) Thus, a covenant by which an employee simply agrees, as a condition of his employment, not to compete with his employer after they have severed relations is (¡not only subject to the overriding limitation of “ reasonableness ” but is enforced only to the extent necessary to prevent the employee’s use or disclosure of his former employer’s trade secrets, processes or formula^ (see, e.g., Lepel High Frequency Labs. v. Capita, 278 N. Y. 661; Clark Paper & Mfg. Co. v. Stenacher, 236 N. Y. 312; National Starch Prods. v. Polymer Inds., 273 App. Div. 732) or mis solicitation of, or disclosure of any information concerning, the other’s customers) (See, e.g., Carpenter & Hughes v. De Joseph, 10 N Y 2d 925, affg. 13 A D 2d 611; Clark Paper & Mfg. Co. v. Stenacher, 236 N. Y. 312, 318, supra; Corpin v. Wheatley, 227 App. Div.. 212.) |ff, however, the employee’s services are deemed “ special, unique or extraordinary ”, then, the covenant may be enforced by injunctive relief, if “ reasonable,” even though the employment did not involve the possession of trade secrets or confidential customer lists) (See Frederick Bros. Artists Corp. v. Yates, 296 N. Y. 820, affg. 271 App. Div. 69; Clark Paper & Mfg. Co. *273 v. Stenacher, 236 N. Y. 312, 320, supra; Kaumagraph Co. v. Stampagraph Co., 235 N. Y. 1, 9; Corpin v. Wheatley, 227 App. Div. 212, 213; supra; Magid v. Tannenbaum, 164 App. Div. 142, 144-145; see, also, 6A Corbin, Contracts [1962], pp. 99-100; cf. Foster v. White, 248 App. Div. 451, affd. 273 N. Y. 596.)
With these principles in mind, we turn to the record before us to determine if the present restrictive covenant permits enforcement as either one ancillary to the sale of a business or one made in connection with a contract of employment. In our view, it does not.
Although the plaintiff had the defendant sign a paper labeled ‘‘ contract of sale ’ ’, the present transaction may not be considered the sale of a “ business ’ ’ involving the transfer of its “ good will”. We must look behind and beyond the label to ascertain the true nature of the transaction. What it really was, was a hiring of the defendant as an employee, plus the consequent elimination of the very short-lived partnership as a competitor. To view the deal by which the plaintiff accomplished this dual purpose as a “sale” would be to exalt form over substance. More, to judge the defendant’s restrictive covenant by the rules governing covenants in @ ‘ sale ’ ’ situations would tend to undermine the teaching of the cases that it is contrary to this State’s public policy to enforce restrictive covenants in employment agreements unless the special circumstances noted above exist. (See, e.g., Carpenter & Hughes v. De Joseph, 10 NY 2d 925, affg. 13 A D 2d 611, supra; Lynch v. Bailey, 300 N. Y. 615, affg. 275 App. Div. 527, supra.)
It may well be, as the defendant claims, that the transaction took the form it did for tax purposes but, whether that be so or not, it is manifest that the defendant conveyed nothing to the plaintiff. He certainly could not have transferred any data processing customers or good will in the data processing business because, as the record itself demonstrates, neither he nor his partnership was in that business and had no customers at the time of the deal. He was merely a salaried employee of Grayson-Robinson. Thus, the only thing which the defendant “gave” the plaintiff was his services as an employee and, accordingly, there was here no more of a transfer of “ good will ” than is present in any employment situation. The enforcibility of the defendant’s restrictive covenant is, therefore, *274 necessarily governed by the rules applicable to covenants made in connection with contracts of employment.
When so viewed, it is clear that it is not enforcible. ¿Since there is a finding below that no trade secrets are involved and since no claim is advanced that customers have been pirated or customer lists used, the plaintiff may prevail only if the defendant’s services are “ unique ” or “ extraordinary ”J More must, of course, be shown to establish such a quality than that the employee excels at his work or that his performance is of high value to his employer. It must also appear that his services are of such character as to make his replacement impossible or that the loss of such services would cause the employer irreparable injury. (See, e.g., Frederick Bros. Artists Corp. v. Yates, 296 N. Y. 820, affg. 271 App. Div. 69, 71, supra; Clark Paper & Mfg. Co. v. Stenacher, 236 N. Y. 312, 320, supra; Kaumagraph Co. v. Stampagraph Co., 235 N. Y. 1, 9, supra; Magid v. Tennenbaum, 164 App. Div. 142, 144-145, supra.)
We search the record before us in vain for any evidence which even points in such a direction. On the contrary, not only is there ^.either mention in the complaint nor proof upon the trial that the defendant’s services are or were considered “ unique ” or “ extraordinary ” but, when the defendant sought to establish the ‘ ‘ ordinary ’ ’ nature of his work by eliciting testimony concerning the availability of others with the same skills, he was actually prevented from so doing by an objection from the plaintiff.
Since, then, there is no evidence to support a finding either that the defendant’s services are “ unique ” or that the transaction under consideration constitutes a “sale” of the kind envisaged by the court when it announced the rule to govern the enforcement of restrictive covenants ancillary to the sale of a business, it follows that no basis exists for enjoining the defendant from pursuing his occupation.
It should be noted that this appeal involves two changes in practice effected by the newly enacted Civil Practice Law and Bules: the elimination of the requirement of a notice of appeal where the appeal is taken by permission (CPLB 5515) and the adoption of a uniform rule designating the order of the Appellate Division as the appealable paper on all appeals taken to this court from the Appellate Division, whether in actions or *275 special proceedings (CPLE 5512). Although these amendments are not here challenged, we have reviewed them since they affect our jurisdiction and have concluded, unanimously, that they were validly adopted.
We need discuss only the amendment relating to the appeal-able paper. The CPLE has eliminated the “ unfortunate ” and “ confusing” distinction between actions and special proceedings which prevailed under the Civil Practice Act (§ 591) — pursuant to which the appeal from a final determination of the Appellate Division was required to be taken, in an action from the judgment entered in the court below and in a special proceeding from the order of the Appellate Division. (Matter of Westberg, 279 N. Y. 316, 319-321; see Cohen and Karger, Powers of the New York Court of Appeals, pp. 94-124.) There has not, we observe, been any corresponding amendment to the related provisions of the Judiciary Article of our Constitution (art. VI, § 3, subd. b, pars. [1], [6]) which still make reference to the “ judgment * * * entered upon the decision of an appellate division of the supreme court which finally determines an action ’ ’. However, we find no material conflict between the Constitution and the statute since the CPLE may properly be read as treating the order of the Appellate Division in such circumstances as the equivalent of a judgment for purposes of appeal. (Cf. Douglas v. State of New York, 296 N. Y. 530, 532; see Cohen and Karger, Powers of the New York Court of Appeals, pp. 107-108, 219-220.)
The order appealed from should be reversed, with costs in all courts, and the complaint dismissed.