**AMERICAN EUTECTIC WELDING ALLOYS SALES CO., INC. and Eutectic Corporation, Inc., Plaintiffs,**

**v.**

**Pablo GARCÍA–RODRIGUEZ, Defendant.**

**Civ. No. 104–72.**

United States District Court,
D. Puerto Rico.

Jan. 3, 1973.

G. A. Nigaglioni, San Juan, P. R., for plaintiffs.

Benjamin Rodriguez-Ramon, San Juan, P. R., for defendant.

## MEMORANDUM OPINION AND ORDER

CANCIO, Chief Judge.

Plaintiffs filed an amended complaint in this case on February 4, 1972. Said complaint alleges, in essence, that the plaintiffs are corporations engaged in the production, distribution and marketing of welding and soldering alloys and related products. It further alleges that the defendant García was hired by the plaintiff, American Eutectic, on September 14, 1966, after entering into an employment contract in which the defendant agreed that for a period of two years following the date of termination of said contract, he would not work for any competitors in the same territory he covered for American Eutectic during the last two years of his employment, and further agreed to maintain plaintiff American Eutectic's customer lists and identifications and other business secrets as confidential.

The plaintiffs requested injunctive relief against defendant García to prohibit him from "disclosing or using confidential information with respect to plaintiff's customers or from calling upon any of plaintiff's customers which have been designated in customer lists, card files or other customer identifying records." The complaint also requested that the defendant be restrained "from employment in competition with plaintiffs for a period of two years from the date of his termination of employment with [them] in the Commonwealth of Puerto Rico."

On April 27, 1972, the plaintiffs moved for summary judgment, limited to the issue of enjoining the defendant from soliciting plaintiffs' customers. The defendant opposed said motion on its merits and moved for the dismissal of the amended complaint.

The defendant also alleges that this case should be dismissed for lack of jurisdiction because the plaintiffs have not established the requisite $10,000 jurisdictional amount, and further contends that a stay of proceedings should be granted under the rule of Fornaris v. Ridge Tool Co., 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970).

## JURISDICTION

The defendant bases his contention of non-compliance with the jurisdictional amount of $10,000[1] on the stipulated fact that there have been no substantial changes in Eutectic's sales in the territory covered by García. The defendant

---

l.  28 U.S.C.A. Sec. 1332.

relies mainly on Zep Manufacturing Corporation v. Haber, 202 F.Supp. 847 (1962), which involved a restrictive covenant for a two year period imposed upon a distributor. In that case the sole evidence of value to the plaintiff before the Court was the loss of $3,000 in profits from the distributor. The Court suggested that the result could have varied if the plaintiff had established other possible losses:

> Nevertheless, the plaintiff has suggested no other basis for calculating the benefit to be derived from an injunction, such as protection of good will.

The plaintiffs allege that the future effects of the defendant's alleged breach of Eutectic's other employees is relevant when determining the jurisdictional amount, Premier Industrial Corporation v. Texas Industrial Fastener Company, 450 F.2d 444 (5 Cir., 1971). Paragraph 27 of the affidavit of George Vanta, Divisional Manager of Eutectic Corporation, states that the possible pirating away of Eutectic's sales personnel could be valued at more than $10,000.

The right to be free from disclosure of confidential information is also highly valued by the plaintiffs.[2] Hulenbusch v. Davidson Rubber Co., 344 F.2d 730 (8 Cir., 1965). Possible damages to good will are also greatly esteemed by the plaintiffs. Mr. Vanta's affidavit in paragraphs 17, 18 and 26 seems to uphold an alleged loss of good will. Good will though an intangible, constitutes property and is recognized and protected by law, Mann v. Fisher, 51 F.Supp. 550 (U.S.D.C.1943).

The amount in controversy should be determined from the standpoint of the plaintiff, Moore's Federal Practice, Vol. 1, 0.91, p. 827; Central Mexico Light & Power Co. v. Munch, 116 F.2d 85 (2 Cir., 1940); Alfonso v. Hillsborough County Aviation Authority, 308 F.2d 724 (5 Cir., 1962); Breault v. Feigenholtz, 380 F.2d 90 (7 Cir.,

1967). We are not convinced that the value of the remedy sought by the plaintiff does not reach the jurisdictional amount. This Court not being able to affirm, beyond a legal certainty, that the value of the injunction sought by the plaintiffs does not exceed the requisite jurisdictional amount, is bound to uphold jurisdiction, at least at this stage of the case, and in this type of motion. Muller v. Groban, 346 F.2d 263 (7 Cir., 1965); Matthiesen v. Northwestern Mutual Ins. Co., 286 F.2d 775 (5 Cir., 1961); Arnold v. Troccoli, 344 F.2d 842 (2 Cir., 1965).

## ABSTENTION

The defendant moved that an order to stay proceedings be granted until the Supreme Court of Puerto Rico interprets the provisions of the Constitution of the Commonwealth of Puerto Rico alleged to have been violated by the restrictive covenant entered into between the parties. The defendant cites Fornaris v. Ridge Tool Co., 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970), in support of its contention. In that case the Court of Appeals for the First Circuit held that the Dealer's Act of the Commonwealth of Puerto Rico (Act No. 75 of 1964, 10 L.P.R.A. Section 278 et seq.) was repugnant to the federal Constitution. On appeal, the Supreme Court held that since that case dealt with a rather vague Puerto Rican law, which the Supreme Court of Puerto Rico had not authoritatively construed, federal courts should hold their hand until the Supreme Court of Puerto Rico has had the opportunity to interpret the law.

The rule of *Fornaris* is also inapposite to the case at bar. The underlying premise of *Fornaris* is that the highest court of Puerto Rico be given the opportunity to construe a Puerto Rican statute in a manner not repugnant to the federal Constitution. We are not, even remotely, involved in a case where we may declare a Puerto Rican statute unconstitutional, *vis a vis* the federal

---

2. Affidavit of George Vanta, Par. 25.

Constitution. The principle of comity, clearly present in Fornaris, cannot be said to be found in the present case. The abstention doctrine was instituted in order to prevent federal equitable intervention in those cases where state court construction of its laws could obviate the need for a decision on the federal claim. Railroad Commission v. Pullman Company, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). See also Harmon v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1964); Reetz v. Bozanich, 397 U.S. 528, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971) and Marin v. University of Puerto Rico, 346 F.Supp. 470 (DCPR, 1972, Order convening three-judge court).

In view of the above, defendant's motion to stay proceedings is denied.

Having disposed of these two preliminary matters, let us face plaintiffs' and defendant's motions for summary judgments on the merits.

FINDINGS OF FACT

The Court finds that the following facts are not in controversy:

1. The defendant García was hired by the plaintiff American Eutectic on September 14, 1966. A contract for employment was signed by the defendant in Puerto Rico, and lastly signed and consented to by the plaintiff. American Eutectic in the state of New York. Said contract, also dated September 14, 1966, designates Mr. García as a "Sales Representative" and forms part of plaintiffs' amended complaint as Exhibit "A".

2. Plaintiff Eutectic is a nationally known corporation specializing in the manufacture of welding and soldering alloys and related products and equipment. Plaintiff American Eutectic is a subsidiary of Eutectic and engages in the distribution, sale, marketing and promotion of products manufactured by Eutectic.

3. From the year 1961 until the date of his employment with Eutectic, Mr. García was employed by several compa-nies as salesman. Mr. García's main task in his employ with Eutectic as a "sales representative" was really that of salesman. He is presently employed by Aníbal L. Arsuaga, Inc. (A.L.A.) as a salesman. During his employ with Eutectic he was named District Supervisor in 1968 and Regional Manager in 1971.

4. Defendant García was trained by the plaintiffs in Flushing, New York. His training included the familiarization with the products he was to sell and the general techniques used in merchandising. He resigned his position with Eutectic in 1971.

5. At present, Mr. García, as a salesman for ALA, sells substantially the same types of welding products he sold when employed by Eutectic. García solicits for ALA a substantial number of his former clients when he worked for Eutectic. Of these, a substantial number were also prior clients of ALA. (See Exhibit 4, Deposition of defendant García, and affidavit of Mr. Aníbal L. Arsuaga, dated May 31, 1972.)

6. Garcia's present employer, ALA, has been selling welding products in Puerto Rico since 1958.

7. Plaintiffs' "Customer Control Cards" system consists of preparing a separate card for each of their customers, which cards the specific sales made to each customer were recorded. The defendant delivered such cards to plaintiffs before his resignation from their employ.

8. The contract of employment executed between the parties on September 14, 1966 states, in part, the following:

(a) Paragraph 7 states that for a period of two years following the date of termination of the agreement, García would not work for any competitor in the same territory he covered for American Eutectic, during the last two years of his employment and within a 50-mile radius thereof.[3]

(b) Paragraphs 4 and 7 hold García responsible to maintain plaintiff Ameri-

3. Puerto Rico is 100 miles long by 36 miles wide.

can Eutectic's customer lists and identifications, and other special business secrets as confidential.

(c) Paragraph 13 states that the contract, which was finally executed in New York, was to be governed by the laws of the State of New York in all respects.

In view of the pleadings, the motions for summary judgments, the memoranda, affidavits and depositions filed by the parties, and the above stated findings of fact not in controversy, and otherwise being advised on the premises, this Court makes the following:

## CONCLUSIONS OF LAW

The contract of employment entered into by the parties was performed almost entirely within the Commonwealth of Puerto Rico. Nevertheless, it states that the law of the State of New York will apply as to all its aspects. This argument of the parties, though legal, is not absolute and need not be followed in all instances. For example, it is well settled that if a contract goes against the public policy of the jurisdiction in which it is to be performed, the law which must apply as to such performance and enforcement must be the law of that state. This principle, being of public policy, may not be waived by the parties. It seems to us elementary that a contract negotiated and signed in any state of the Union or in a foreign country, in which it is perfectly and clearly stated that it must be interpreted and enforced according to the laws of the place where it was signed, cannot be enforced in another state—Puerto Rico in our case—where the public policy or the laws would be violated by its enforcement there. If the parties cannot sign in Puerto Rico contracts in which they oblige themselves against the Puerto Rican public policy, much less can they be allowed to circumvent this same principle merely by moving somewhere else to sign the contract. See May v. Mulligan, 36 F. Supp. 596 (W.D.Mich., 1939); 117 F.2d 259; Super Maid Cook-Ware Corp. v. Hamil et al., 50 F.2d 830 (5 Cir., 1931); Sonotone Corp. v. Ellis, 2 N.J.Super. 419, 64 A.2d 255 (1949). Therefore, if the clauses of the employment contract at bar defeat the public policy of the Commonwealth of Puerto Rico, we must refrain from enforcing them. See Article 11, Civil Code of Puerto Rico, 31 L. P.R.A. Sec. 11.

II. The defendant alleges that those provisions of the employment contract in question which limit his ability to work for competitors of his former employer are unconstitutional and violate the public policy of the Commonwealth of Puerto Rico. We are here mainly concerned with Article II, Section 16 of the Constitution of the Commonwealth of Puerto Rico which in its pertinent part reads as follows:

> The right of every employee to choose his occupation freely and to resign therefrom is recognized . . .

Nothing in the legislative history of this section sheds any light as to the intention of the framers of the Constitution with respect to the particular issue at hand.[4] The plaintiffs have limited their request for summary judgment to enjoining the defendant from soliciting the plaintiffs' customers. As to this, there is no uncontroverted evidence in the record to establish, either that the defendant has divulged trade secrets or confidential information, or that, utilizing his peculiar situation as a former Eutectic employee, he has pirated away customers from the plaintiffs. The defendant, since 1961 to the present, has always been employed as a salesman. In spite of the fact that he, in his last years with Eutectic held certain supervisory functions, his main task and field of endeavor was that of salesman. There is evidence in the record to support the conclusion that, aside from familiarizing with Eutectic's products and prices, the only training he ever re-

4. Convención Constituyente de Pureto Rico, Diario de Sesiones, (1951), pp. 417.2, 608.2, 614, 840.2, 846, 904.2, 910.3.

ceived from Eutectic was in general sales techniques. There is nothing to sustain the conclusion that he was privy to any confidential data, or that he was a high level business executive. Purely and simply put, as far as this motion is concerned, the defendant is a salesman by profession, and this has constituted for many years his only means of livelihood.

Literally read, the restrictive covenant in question and the relief requested by the plaintiffs constitute a restriction on the defendant's right to resign from a past employment and to effectively work at the occupation he has chosen. Is this constitutionally permissible under Article II, Section 16, of the Bill of Rights of the Commonwealth Constitution?

The plaintiffs cite the case of Universal Electric Corp. v. Golden Shield Corp., 316 F.2d 568 (1 Cir., 1968), as authority to sustain that the restriction they would have us enforce is constitutionally permissible. The test handed down in that case was one of reasonableness, and the Court specifically pointed out that the defendants in that case were "top echelon executives" who were actively involved in the piracy of their employers' business even before they ceased to be employed by him. The Court also made clear that the appellants were not "being deprived of their only means of livelihood." It is quite clear that in the present case we are dealing with a mere employee, and not an executive in a sensitive position, and that there is at present not even a scintilla of evidence in the record to support a finding of piracy. Universal Electric Corp. v. Golden Shield Corp., is clearly not applicable.

The plaintiffs also rely on Oliver Exterminating Services Corp. v. Félix García Franco, (Superior Court of Puerto Rico, San Juan Part, Civil 63–5032, decided on January 27, 1965).[5] Their reliance is misplaced. This case again deals with the highest executive of the former employer, and as the Court stated, involves a "clear case of commercial piracy." The Court, very eloquently, expressed what we also consider to be the applicable rule in this type of cases:

> As a general rule, these clauses are valid if they result to be reasonable. Reasonable in relation to the employer, in relation to the employee and in relation to the general public . . . There exists no uniform rule and each case must be decided taking into consideration the specific facts of each case. The same restriction may seem reasonable in one case and unjust and arbitrary in another, depending on the special circumstances and the facts. Since restrictive covenants bear with them a reduction of individual liberty and imply a restriction on trade, *they are presumed illegal* and the plaintiff bears the burden of demonstrating the same to be reasonable. The mere fact that the employer has a written contract with a restrictive covenant that states that the employee, when leaving his employ, may not compete, that the employee violated the contract and commenced to work for a competitor . . . by itself, is not sufficient to grant an injunction. It is necessary that the existence of a valid contract, and that the restriction requested to be enforced not be greater than what is necessary to protect the interests of the employer, be demonstrated. (Our translation).

The Superior Court goes on to analyze those factors which are relevant in order to determine this, among which we find an analysis of the interests of the employer which may be legitimately protected. We do not feel that mere fear of competition is an interest in and of itself valid enough for us to restrain the employee's liberty in this case. Eutectic has not established that Mr. García used his privileged position to the detriment of his former employer. There is no

5. The Supreme Court of Puerto Rico denied writ of revision on April 12, 1965 in case R–95–37.

showing of piracy, or that the defendant revealed confidential information, which we cannot presume at this stage. Purchasing Associates v. Weitz, 13 N.Y.2d 267, 246 N.Y.S.2d 600, 196 N.E.2d 245 (1963). A restrictive covenant in a contract of employment is illegal if the restraint is greater than is required for the protection of the person for whose benefit it is imposed. Wisconsin Ice and Coal Co. v. Lulth, 213 Wis. 42, 250 N.W. 819 (1933). Aside from mere fear of competition, the plaintiffs have not established a valid interest which merits the protection of this Court and the interference with rights constitutionally protected by the Constitution of the Commonwealth of Puerto Rico.

The plaintiff ascribes great importance to the customer control cards once prepared by the defendant. Said cards were never in the defendant's possession after he left Eutectic. We also fail to see the confidentiality of the information contained in these cards, which, in any event, are no longer in the possession of the defendant. The particular facts of this case do not reveal such confidentiality.

As to the plaintiffs' contention that the enforcement of the covenant is necessary to protect good will, again we are compelled to look at the record which reveals that plaintiffs' fears may be ill founded. There is no evidence that the defendant used his peculiar situation as a former Eutectic employee to disloyally destroy his former employer's good will. We cannot base a restriction of defendant's liberty to choose his employment freely on mere suppositions and conjectures.

The constitutional right of a worker to freely choose his employment also implies his right to carry out the responsibilities of his new job, which in this case means the right of García to freely solicit clients which he formerly solicited when employed by Eutectic, for we are bound to construe Article II, in a manner consistent with the high social purpose which inspired it. Article II, Constitution of the Commonwealth of Puerto Rico. Martín Santos v. V. R. H. C., 89 PRR 173, 182 (1963).

It is therefore ordered that plaintiffs' motion for summary judgment requesting a preliminary or permanent injunction is hereby denied.

It is further ordered that the defendant's motion for summary judgment requesting a dismissal is also denied.

The plaintiffs are ordered to post an acceptable nonresident bond in the amount of Three Hundred ($300.00) Dollars to be filed with the Clerk within a period of thirty (30) days from the docketing of this order.