BRENTLINGER ENTERPRISES, d.b.a. Midwestern
Auto Group and Midwestern BMW, Appellant,

v.

CURRAN et al., Appellees.

[Cite as *Brentlinger Enterprises v. Curran* (2001), 141 Ohio App.3d 640.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–737.

Decided March 20, 2001.

642

*Vorys, Sater, Seymour & Pease, LLP, William G. Porter II, Robert A. Harris* and *Michael C. Griffaton,* for appellant.

*Carlile, Patchen & Murphy, Dennis J. Concilla* and *Michael H. Igoe,* for appellees.

JOHN W. McCORMAC, Judge.

Plaintiff-appellant, Brentlinger Enterprises, d.b.a. Midwestern Auto Group and Midwestern BMW, appeals from a judgment of the Franklin County Court of Common Pleas declining to enforce a noncompete clause against defendant-appellee, John T. Curran.

According to the testimony presented at trial, Brentlinger Enterprises, d.b.a. Midwestern Auto Group and Midwestern BMW ("MAG"), is an automobile dealership located in central Ohio that specializes in European automobiles. MAG owns franchises for the following eleven European automobile lines: Porsche, Audi, Volkswagen, BMW, Saab, Aston Martin, Rolls Royce, Bentley, Lotus, Land Rover, and Ferrari. MAG's largest competitor in the central Ohio market is Byers Imports, which owns franchises for the following five European automobile lines: Porsche, Audi, Volkswagen, Volvo, and Jaguar.

Defendant Curran has worked in the sale of European automobiles since 1984. From 1993 until 1997, Curran was employed by MAG as a salesman. In

February 1997, Curran left MAG to become Byers Imports' sales manager for its Volkswagen, Audi and Subaru franchises. In November 1999, Curran was fired by Byers Imports. On January 6 or 7, 2000, MAG hired Curran as its sales manager for its Audi and Saab franchises.

On January 12, 2000, MAG presented defendant with an employment contract, which contained noncompete and confidentiality clauses. Defendant executed this agreement on January 13, 2000.

In early March 2000, MAG notified all of its sales mangers, including Curran, that it wished to restructure their pay plans. On March 16, 2000, MAG's Chief Financial Officer, Timothy Galli, met with Curran to discuss the new pay plan, which would replace the pay plan contained in the employment contract that Curran signed on January 13, 2000. At this meeting, Galli provided Curran with a copy of the new pay plan to review and sign, and Curran expressed his dissatisfaction with several aspects of the new plan.

Within days of learning the details of MAG's proposed new pay plan, Curran contacted Byers Imports' General Manager, Kevin King, about returning to his old job. King, who had already fired the individual who had replaced Curran when he left Byers Imports in November of the previous year, immediately expressed interest in rehiring Curran as sales manager for Byers' Volkswagen, Audi, and Subaru lines if they could "clear up the matter of the noncompete [clause in Curran's employment contract with MAG]."

On Friday, April 14, 2000, Curran submitted his two-week notice of resignation to MAG. When Curran arrived for work at MAG on the morning of Monday, April 17, 2000, MAG officials informed him that his employment with MAG had ended and that he was to leave the dealership. Because Curran never agreed to the new pay plan, he was compensated according to the terms of his original pay plan for the entire period of his most recent employment with MAG.

Although both Curran and King testified that, as of the time of trial Curran was not and had not been hired by Byers Imports, everyone agrees that, upon leaving MAG's dealership on the morning of April 17, 2000, Curran went directly to Byers Imports and began operating as Byers Volkswagen, Audi, and Subaru sales manager.

On April 18, 2000, MAG filed a complaint and motion in the Franklin County Court of Common Pleas seeking a temporary restraining order and preliminary and permanent injunctions enforcing the terms of the noncompete and confidentiality clauses contained in Curran's employment contract and prohibiting Curran from working at Byers Imports.

On April 19, 2000, the trial court filed an agreed-upon temporary restraining order which prohibited Curran from working for Byers Imports or any business

located in Franklin or Delaware County, Ohio, which is in the business of selling, leasing, or servicing new or used European automobiles.

On May 12 and 15, 2000, a trial was held on MAG's complaint and motion for preliminary and permanent injunctions. On May 22, 2000, the trial court issued a decision granting MAG's request for preliminary and permanent injunctions prohibiting Curran from disclosing any confidential information that he obtained during his most recent employment at MAG, but denying MAG's request for preliminary and permanent injunctions enforcing the noncompete clause in Curran's employment contract and prohibiting Curran from working for Byers Imports. MAG appeals therefrom assigning the following errors:

"1. The trial court's decision refusing to enforce the parties' noncompete agreement was against the manifest weight of the evidence and was an abuse of discretion.

"2. The trial court's finding that appellant Midwestern Auto Group lacks sufficient business interests to warrant enforcement of the parties' noncompete agreement was erroneous, against the manifest weight of the evidence, and an abuse of discretion.

"3. The trial court's finding that appellee John Curran would suffer undue hardship if the noncompete agreement is enforced was erroneous, against the manifest weight of the evidence, and an abuse of discretion.

"4. The trial court erred as a matter of law in denying enforcement of the noncompete agreement on the basis that enforcement would not benefit the public interest, because the proper test is whether enforcement would not be injurious to the public.

"5. The trial court erred after finding that the restrictions in the parties' noncompete agreement were unreasonable under the circumstances, in not modifying those restrictions to give effect to the parties' agreement to its enforceable limits."

MAG's first, second and fifth assignments of error are combined for discussion.

 Because a noncompete clause, which prohibits a former employee from working in competition with his former employer, amounts to a restraint of trade, *Frank, Seringer & Chaney, Inc. v. Jesko* (Dec. 6, 1989), Lorain App. No. 89CA004577, unreported, 1989 WL 147951, such clauses will be enforced only to the extent that the restraints imposed thereby are reasonably necessary to protect the employer's legitimate business interests. See *Raimonde v. Van Vlerah* (1975), 42 Ohio St.2d 21, 25–26, 71 O.O.2d 12, 14–15, 325 N.E.2d 544, 546–548. A noncompete clause will be found to be reasonable only where the employer can show by clear and convincing evidence that the restrictions imposed

by the non-compete clause (1) are no greater than necessary for the protection of the employer's legitimate business interests, (2) do not impose undue hardship on the employee, and (3) are not injurious to the public. *Id.* at paragraph two of the syllabus. Factors which may be considered in determining whether a noncompete clause is reasonable include the clauses' geographic and temporal limits, if any; whether the employee represents the sole customer contact; whether the employee possesses confidential information or trade secrets; whether the clause seeks to restrain ordinary, rather than unfair, competition; whether the clause stifles the pre-existing skills of the employee or only those skills that were developed while working for the employer; the balance of the clause's detriment to employer and employee; whether the clause restricts the employee's sole means of support; and whether the restricted employment is merely incidental to the main employment. *Id.* at 25, 71 O.O.2d at 14, 325 N.E.2d at 546–547.

■ In the instant case, MAG seeks an injunction as a means of enforcing the noncompete clause. An injunction is an extraordinary remedy in equity that is available only where there is no adequate remedy available at law. *Garono v. State* (1988), 37 Ohio St.3d 171, 173, 524 N.E.2d 496, 498–499. Injunctive relief is not available as a right but may be granted by a court if it is necessary to prevent a future wrong that the law cannot. *Id.* Accordingly, an employer who seeks an injunction to enforce a noncompete clause must not only establish the reasonableness of the noncompete clause at issue but must also show that the employer is likely to suffer irreparable harm as a result of the employee's breach of that clause. *Levine v. Beckman* (1988), 48 Ohio App.3d 24, 27, 548 N.E.2d 267, 270–271. Further, the decision of whether to grant or deny injunctive relief lies within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *Garono.* An abuse of discretion connotes more than an error of judgment; it implies a decision that is without a reasonable basis, and one that is clearly wrong. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1141–1142.

The noncompete clause at issue in the present case provides as follows:

"Non–Competition Covenant. MAG is engaged in a competitive business. In the course of his employment, Mr. Curran will hold a position of trust and will be exposed to and will acquire valuable confidential and proprietary information of MAG. This information includes, but is not limited to, information regarding MAG's clients (customers), finances, operations, pricing, marketing, recruiting, training, and selling practices, and methods, techniques, and computer software unique to MAG. Mr. Curran agrees that he shall not, for a period of 18 months immediately following separation from employment with MAG (whether the separation is voluntary or involuntary), directly or indirectly divert or solicit, or attempt to divert or solicit, any clients of MAG, or any prospective clients of

MAG (defined as individuals who have been identified by MAG as prospective clients prior to Mr. Curran's separation from employment), in order to sell or attempt to sell an automobile or other product or service similar to those provided by MAG. Mr. Curran further agrees that he shall not, for a period of 18 months immediately following separation from employment with MAG for any cause, directly or indirectly, solicit any of MAG's employees to leave MAG or to sever their relationship with MAG.

"Mr. Curran shall not engage in direct competition with MAG, and shall not engage in any of the following activities for a period of 18 months following his separation from employment with MAG (whether the separation is voluntary or involuntary): (1) own or operate as an individual, principal, director, shareholder with a ten percent (10%) interest or more; (2) be employed by or act as a consultant or independent contractor to; or (3) act as an agent or representative of the following: any entity or business, which is engaged in or about to be engaged in the business of selling, leasing, and/or servicing new or used European Vehicles, as defined below, unless the number of European Vehicles sold or leased is 2% or less of the total number of motor vehicles sold or leased by such business in the 12 months before or after Mr. Curran's separation from employment. This covenant shall extend in geographic scope throughout Franklin and Delaware counties, and shall also extend to any other clients or prospective clients of MAG who reside or have a principal place of business within 100 miles of MAG's headquarters in Dublin, Ohio.

"The term European Vehicle is defined for purposes of this Agreement as any motor vehicle manufactured in Europe or manufactured elsewhere by a company which has its headquarters in Europe, including, without limitation, Audi, Saab, BMW, Volkswagen, Land Rover, Ferrari, Rolls–Royce, Bentley, Lotus, Aston Martin, Porsche, Mercedes–Benz, and Jaguar.

"If any of the provisions of this section of the Agreement are held to be unreasonable or unenforceable by any court, those provisions will be automatically amended so as to apply only to the extent that they are reasonable and enforceable."

The trial court declined to grant an injunction enforcing this clause on the grounds that MAG had failed to carry its burden of proof on any of the three elements set forth in *Raimonde.*

MAG challenges the trial court's conclusions that it failed to carry its evidentiary burden on the first *Raimonde* element as against the manifest weight of the evidence.

A judgment will be reversed as against the manifest weight of the evidence only where there is no competent, credible evidence to support it. *C.E.*

*Morris Co. v. Foley Const. Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 261–262, 376 N.E.2d 578, 578. The resolution of conflicting evidence is generally a matter best left to the trier of fact, *G.F. Business Equip., Inc. v. Liston* (1982), 7 Ohio App.3d 223, 226, 7 OBR 285, 287–288, 454 N.E.2d 1358, 1361, and a judgment will not be reversed as against the manifest weight of the evidence "merely because the evidence sustaining it is open to suspicion or does not impress the reviewing court, or the court is not satisfied that such verdict is right, or would have rendered a different verdict or decided differently if it had heard the case in the first instance." *Hines v. Amole* (1982), 4 Ohio App.3d 263, 267, 4 OBR 480, 485, 448 N.E.2d 473, 477.

With respect to the first *Raimonde* element, the trial court found that MAG had not shown that it had legitimate business interests sufficient to justify enforcement of the noncompete clause. Specifically, the trial court found that (1) Curran did not take any confidential or proprietary documents from MAG's place of business; (2) much of the information that MAG claims to be trade secrets is in fact not trade secrets, as it was either known to Curran when he came to MAG as a result of his extensive prior experience selling Audi automobiles, or is readily available to the public; and (3) the value of whatever proprietary information or trade secrets Curran did take with him when he left MAG was of limited usefulness to MAG's competitors and would rapidly become stale with the passage of time.

In response to the trial court's conclusion that the evidence did not establish that enforcement of the noncompete clause was necessary to protect MAG's legitimate business interests, MAG argues that it presented evidence establishing the existence of three legitimate business interests, any one of which is sufficient to require enforcement of the noncompete clause.

MAG first asserts that it presented evidence that, while Curran was employed at MAG, he had access to various trade secrets and proprietary business information which, if made available to a competitor of MAG such as Byers Imports, would provide such competitor with an unfair competitive advantage.

It is true that MAG's owner, Mark Brentlinger, testified that, as MAG's Audi and Saab sales manager, Curran had access to MAG's business plan for the year 2000, as well as advertising, pricing, and inventory information, all of which Brentlinger described as proprietary information or trade secrets that would be very damaging to MAG in the hands of a competitor. Clearly, if accepted by the trial court, Brentlinger's testimony would have justified enforcement of the noncompete clause. However, Kevin King, the General Manager for Byers Imports, testified that much of the information which Brentlinger classified as

trade secrets was either readily available to his dealership or of little or no value to it.

The trial court's decision indicates that, on the issue of trade secrets and proprietary information, the court generally accepted King's testimony and heavily discounted Brentlinger's testimony. As the finder of fact, the trial court was in the best position to judge Brentlinger's and King's credibility, *In re Michael* (1997), 119 Ohio App.3d 112, 133, 694 N.E.2d 538, 552, and was free to believe or disbelieve their testimonies in whole or in part as it saw fit. Accordingly, we cannot say that the trial court's finding that Curran is not in possession of proprietary information or trade secrets sufficient to justify enforcement of the noncompete clause was against the manifest weight of the evidence.

 MAG also asserts that it presented evidence establishing that the loss of a "key" employee, such as Curran, causes severe disruption to its business and that the prevention of such disruption is a legitimate business interest which justifies enforcement of the noncompete clause.

MAG unquestionably presented testimony that the loss of Curran as its Audi and Saab sales manager was extremely disruptive to MAG's business; however, this fact does not make such disruption a business interest which will justify enforcement of a noncompete clause against a former employee.

Generally, the only business interests which have been deemed sufficient to justify enforcement of a noncompete clause against a former employee are preventing the disclosure of the former employer's trade secrets or the use of the former employer's proprietary customer information to solicit the former employer's customers. *Jesko, supra.*

MAG, however, cites *Parma Internatl., Inc. v. Bartos* (Feb. 7, 1990), Lorain App. No. 89CA004573, unreported, 1990 WL 11716, for the proposition that protecting against the business disruption caused by the loss of an important or "key" employee is sufficient to justify enforcement of a noncompete clause.

In *Parma*, the Ninth District Court of Appeals was faced with the issue of whether a noncompete clause could be enforced against a former employee who did not possess any trade secrets, but who, during a six-year period of employment, was "involved in every facet of [his former employer's business]" and had been instrumental in his former employer's growth from a "cottage industry [in]to a $5,000,000 a year business." Relying on a line of cases decided by the New York Court of Appeals that hold that, where an "employee's services are truly " 'special, unique or extraordinary' " and not merely of 'high value to his employer,' " enforcement of a noncompete clause may be appropriate even though trade secrets or customer information is not involved, the *Parma* Court held that it was reasonable to enforce a one-year covenant not to compete in order to give

the employer time to find a replacement for an employee who had been such an "integral part of the company." *Parma* (citing *Columbia Ribbon & Carbon Mfg. Co., Inc. v. A–1–A Corp.* [1977], 42 N.Y.2d 496, 499, 398 N.Y.S.2d 1004, 1006, 369 N.E.2d 4, 6; *Purchasing Assoc., Inc. v. Weitz* [1963], 13 N.Y.2d 267, 246 N.Y.S.2d 600, 605–606, 196 N.E.2d 245, 249).

Although the Ninth District did not discuss what characteristics make an employee "special, unique, or extraordinary" in *Parma*, the New York cases cited therein indicate that "[m]ore must * * * be shown * * * than that the employee excels at his work or that his performance is of high value to his employer. It must also appear that [the employee's] services are of such character as to make his replacement impossible or that the loss of such services would cause the employer irreparable injury." *Weitz.* Although the court in *Parma* did not discuss the "special, unique, or extraordinary" standard, the employee at issue therein, who, during a six-year period of employment had been "involved in every facet of [his former employer's business]" and who had been critical to his employer's growth from a "cottage industry [in]to a $5,000,000 a year business," clearly satisfied the standard.

In the present case, MAG has not argued that Curran was a "special, unique, or extraordinary" employee similar to the employee in *Parma*. Moreover, given that Curran held a position at MAG that was at best middle-level management, that he held the position for only three months, and that the position involved work with only two of the dealerships' eleven automobile lines, Curran was not the type of invaluable and virtually irreplaceable employee with which the court was faced in *Parma*.

Further, we find MAG's argument that enforcement of the noncompete clause is justified by the need to protect its business from the disruption caused by the loss of a valuable employee unpersuasive for several additional reasons. First, in order to be entitled to have the noncompete clause enforced by means of an injunction, MAG must show that such enforcement will prevent it from suffering irreparable harm. However, the disruption caused to MAG's business by Curran's departure has already occurred and enforcement of the noncompete clause will not cure or alleviate that disruption. While it might be argued that an injunction enforcing the noncompete clause against Curran would protect MAG against future disruption by deterring other employees who have signed similar noncompete clauses from leaving MAG for competitors, the deterrence of speculative future harm caused by persons other than the defendant herein is not a proper basis on which to grant injunctive relief. See *Arthur Murray Dance Studios v. Witter* (C.P.1952), 62 Ohio Law Abs. 17, 41–44, 105 N.E.2d 685, 701–703 (lengthy discussion of the irreparable injury requirement for injunctive relief, in the context of enforcement of noncompetition clauses).

Second, MAG's contention that Curran's departure caused its business irreparable disruption is belied by its conduct in terminating Curran's employment almost immediately after he submitted his two-week notice of resignation. If Curran's departure was as disruptive as MAG claims, it seems that the more sensible course would have been for MAG to have allowed Curran to complete his final two weeks of employment and to have used that time to prepare for his departure and to seek a replacement.

Finally, the mere fact that the loss of an employee to "greener pastures" is disruptive to a business does not justify the business's limiting the rights of its employees to obtain the highest possible return for their services.

■ MAG's third asserted legitimate business interest justifying enforcement of the noncompete clause is the protection of its relationships with its existing customers and with Audi's factory representative.

With respect to MAG's interest in protecting its relationship with the Audi factory representative, MAG presented evidence at trial that explains why it is important for MAG to maintain a positive relationship with the Audi factory representative, and that Curran became Byers Imports' principal contact with the Audi factory representative as soon as he started serving as Byers Imports' Audi sales manager. However, there is nothing in the record that shows, and MAG has never explained, how its relationship with the Audi factory representative will be damaged by Curran's having contact with that representative as an employee of Byers Imports. MAG simply asserts that such harm will occur. Such conclusory allegations are not sufficient to support injunctive relief.

■ MAG's asserted interest in protecting its customer relationships is somewhat stronger. Preventing a former employee from using his former employer's customer lists or contacts to solicit those customers is one of the traditional grounds for enforcing noncompete clauses. *Jesko, supra.* While there is no evidence that Curran took any documents containing MAG's customer lists with him when he left MAG, there is some evidence that Curran used a customer contact which he obtained while he was employed at MAG to solicit business for Byers Imports. Specifically, the evidence showed that, on Curran's first day at Byers Imports, he discussed the purchase of an Audi with a potential customer with whom he had had similar discussions at MAG only two days earlier. While this evidence does not conclusively establish that Curran used his prior MAG contact to solicit this individual for Byers Imports, as the individual could have come into Byers to comparison-shop on his own, it at least suggests that the possibility that such solicitation occurred. Thus, the possibility that Curran will use whatever MAG customer information he retains in his memory to solicit MAG customers for Byers Imports is a matter that MAG has a legitimate

business interest in preventing. However, the trial court provided reasonable protection against a violation of any abuse in this respect by prohibiting disclosure of confidential information of the above nature (customer information), which the court found was about all information of any value which he obtained. Given the limited information of a confidential nature found by the court to be obtained by Curran during his short term of employment, supported by testimony of King and Curran, and given the prohibition against revealing or using the customer contact information Curran may have obtained, we do not find that the trial court abused its discretion in refusing to enforce the noncompete clause. The trial court's factual findings justify the court's discretionary holding that appellant failed to prove by clear and convincing evidence that there were sufficient business interests recognized under *Raimonde* to make it necessary to enforce the noncompete clause for the protection of appellant's legitimate business interests.

Thus, appellant failed to establish the first requirement of the *Raimonde* test, which requires affirmance of the trial court's judgment regardless of other errors in the trial court findings, since the requirements of *Raimonde* must all be proved. Under the trial court's finding, the noncompete clause was already limited to the extent that the trial court found, within its discretion, to be enforceable. Thus, the fifth assignment of error is not valid.

For the foregoing reasons, appellant's first, second, and fifth assignments of error are overruled.

 We now turn to the second *Raimonde* element, that the noncompete clause does not impose undue hardship on the employee, which is the subject of appellant's third assignment of error.

The trial court concluded that MAG had failed to prove that enforcement of the noncompete clause would not cause Curran undue hardship. In particular, the trial court concluded, given Curran's brief tenure with MAG and the fact that he brought most of his experience and skill as a sales manager of European automobiles, and particularly Audis, with him to MAG, that prohibiting him from working for any dealer of European automobiles in Franklin or Delaware Counties would impose undue hardship on him.

The evidence presented at trial indicated that all of the European automobile dealers in the greater Columbus metropolitan area are located in Franklin or Delaware counties. Thus, enforcement of the noncompete clause would probably prevent Curran from working in his area of specialty, the sale of European automobiles, in the area in which he currently resides. However, certainly much of Curran's experience in selling automobiles would be transferable to the sale of other types of cars, so that the prohibition, limited in time, area, and types of

cars, would not be a prohibitive one. The evidence, by a clear and convincing standard, leaves ample room for Curran to continue working in the automobile sales field, even in types of foreign automobile sales, and restricted only from working in a very small geographical area eliminating only a small percentage of his possible employers. While we believe that the trial court's finding in this respect is against the manifest weight of the evidence, we find that the error was not prejudicial given our disposition of the first assignment of error. Appellant's fourth assignment of error is overruled.

■■■ With respect to the third *Raimonde* element set forth in the fourth assignment of error, the trial court held that enforcement of the noncompete clause was "not necessary to protect the public interest." MAG argues that the trial court applied the wrong standard in reaching this conclusion. We agree.

The trial court appears to have believed that the third *Raimonde* element required MAG to show that enforcement of the noncompete clause was necessary to protect the public interest. In fact, the third *Raimonde* element required MAG to show only that enforcement of the noncompete clause would not harm the public.

The third *Raimonde* element is primarily concerned with the public's interest in promoting fair business competition. See *Robert W. Clark, M.D., Inc. v. Mt. Carmel Health* (1997), 124 Ohio App.3d 308, 319–320, 706 N.E.2d 336, 343–344 (holding that enforcement of a noncompete clause which required a hospital to close its sleep disorder center for a two-year period was not harmful to the public where there were twelve other sleep disorder centers in the same greater metropolitan area). Thus, where enforcement of a noncompete clause would result in an employer's having a near monopoly for its products or services in a given market, enforcement may be denied on the grounds that it would harm the public.

Here, MAG presented evidence that there are six automobile dealers, in addition to its own, in the central Ohio area which sell at least one line of European automobiles. The competition among these various dealers, and the resulting advantage to the public, will not be altered in any significant way by enforcement or nonenforcement of the noncompete clause. However, as with the third assignment of error, the error was not prejudicial. Appellant's fourth assignment of error is overruled.

In summary, given that MAG's legitimate business interests in enforcing the noncompete clause were found to be limited to protecting a few undefined trade secrets that are of limited value to MAG's competitors, and whatever customer information Curran is able to remember, the trial court did not abuse its discretion in refusing to enforce the noncompete clause's prohibition against

Curran working for any automobile dealer .in Franklin and Delaware Counties that sells European automobiles for a period of eighteen months.

MAG's five assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

TYACK and LAZARUS, JJ., concur.

JOHN W. McCORMAC, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.