### The CONTINENTAL GROUP, INC.

#### v.

### John P. KINSLEY et al.

### Civ. No. B–76–224.

United States District Court,
D. Connecticut.

Oct. 8, 1976.

Bernard S. Peck, George J. Markley, Goldstein & Peck, Bridgeport, Conn., for plaintiff.

Peter L. Costas, Melvin S. Katz, and Stuart M. Roth, Schatz & Schatz, Hartford, Conn., for defendants.

## MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR PRE-LIMINARY INJUNCTION

NEWMAN, District Judge.

Plaintiff, the Continental Group, Inc. ("Continental"), seeks to enforce a post-employment non-competition covenant by ob-

taining a preliminary injunction to prevent its former employee, defendant John P. Kinsley ("Kinsley") from continuing in the employ of defendant TPT Machinery Corporation ("TPT") for the remainder of the 18-month period of the covenant. Jurisdiction is properly grounded on diversity of citizenship. While the injunction request was heard very shortly after the complaint was filed, the hearing consumed all or portions of five days, and, though acting on short notice, the parties extensively developed the pertinent facts.

Kinsley is, by his own description, a development engineer with expertise in the field of "plastic container process development." Though lacking a formal education degree, he has, at age 47, acquired extensive experience with companies in England, Canada, and the United States in the development of plastic containers, with recent emphasis on development of machinery and tooling for their production. His experience includes all three principal manufacturing methods for plastic containers—extrusion molding, extrusion blow-molding, and injection blow-molding—with expertise in the two blow-molding techniques.

Kinsley entered the employ of Continental in 1969 as a production engineer and, with a brief interruption, continued his work there until May 31, 1976. In 1975, he expressed interest in transferring to Continental's plastic beverage bottle division, a small unit of 65 employees, working principally at Merrimack, New Hampshire. This division is working to develop the capability to manufacture plastic containers for beverages bottled under pressure, such as beer and soft drinks. This is a relatively new field. The first significant entrant, Monsanto, has only recently put into commercial use its 32-ounce plastic bottle for Coca-Cola. Continental hopes to be among the first to develop a commercially successful plastic bottle for carbonated beverages and toward that end has invested approximately $20 million to develop the requisite technology. Continental anticipates that it will bring its product to market soon and that the product will enjoy sales of more than $100 million by 1980. Continental is endeavoring to manufacture its product by use of the injection blow-molding technique, the insertion, into a mold, of plastic into which air is blown to shape the plastic to the mold. Apparently the trick in this business is to develop a bottle strong enough to contain beverages under pressure, light enough to use a minimum of plastic material, sturdy enough to resist breakage or distortion, and stable enough to resist tipping over.

Prior to transferring to the plastic beverage bottle division, Kinsley was required by Continental, in anticipation of his transfer, to sign the covenant on which the pending claim for relief is based. The covenant, set out in the margin,[1] obligates Kinsley, after his employment with Continental, not to "engage in any competitive enterprise" for himself or as employee for 18 months. "Competitive enterprise" is defined to include "the development, manufacture, distribution or sale of plastic injection blow-molding molds, tools, and machinery, and services incidental thereto" in the United States, Canada, Western Europe, and Japan. Continental requires all employees of its plastic beverage bottle division to sign this covenant. Other than these 65 employees, Continental requires only 25 to 30 of its other 55,000 employees to sign any form of non-competition post-employment agreement. In addition to requiring this cove-

---

1. In consideration of my employment by you, I hereby agree that for a period of 18 (eighteen) months from and after the termination for whatever reason of my employment by Continental, I will not directly or indirectly, for my own account or as an employee of another, engage in any competitive enterprise as hereinafter defined.

The term "competitive enterprise" as used herein shall include the development, manufacture, distribution or sale of plastic injection blow molding molds, tools, and machinery, and services incidental thereto, in the following territories: Canada, United States of America, Western Europe, and Japan.

The territory covered by the term "competitive enterprise" shall not include any geographical area where an agreement not to take competitive employment or otherwise engage in competition is illegal or void by reason of statute, ordinance, administrative ruling or judicial decision.

nant of employees at the plastic beverage bottle division, Continental also endeavors to protect the secrecy of the work at Merrimack by taking elaborate precautions limiting access to the plant, maintaining strict security, and requiring secrecy agreements of customers.

Kinsley was officially transferred to the plastic beverage bottle division on December 15, 1975. At Merrimack Continental was experimenting with an injection blow-molding machine, and working to perfect the bottle this machine could produce. Kinsley was given the assignment of developing a second-generation machine that would use the injection blow-molding process to make an improved product. To carry out this assignment, Kinsley was given access to all data at the Merrimack plant, including results of all test runs on experimental products and all details concerning the production process, including the types of resin used, the bottle designs, the machinery and tooling designs, and the critical temperatures at various stages of the production process. Kinsley thus learned exactly how Continental was making the bottle it hopes to market commercially, what refinements in the injection blow-molding process were producing improvements and failures, and how near to success were its development efforts.

In May, 1976, Kinsley informed his superiors at Merrimack that he was dissatisfied with the level of responsibility he had been given and therefore wanted to leave Continental. The company offered to explore a reassignment to other divisions, but Kinsley elected to terminate his employment and submitted his resignation May 10, 1976. He resigned effective May 31, 1976, but Continental, apprised of his intention to leave, instructed him to depart on May 12, 1976, which he did. On May 14, Kinsley contacted Dr. Emery I. Valyi, president of defendant TPT, whom Kinsley had known from earlier contacts. In 1974 Valyi had asked Kinsley whether he would be interested in working for TPT, and Kinsley declined. In 1976, prior to leaving Continental, Kinsley had three conversations with Valyi. According to Kinsley and Valyi these conversations concerned only the prospect of Continental's purchasing the injection blow-molding machine that TPT is developing. The last conversation occurred only two or three weeks before Kinsley left Continental. While both participants in these conversations deny that they included any discussion of Kinsley's leaving Continental to work for TPT, the circumstances of the 1974 offer by Valyi, the timing of Kinsley's departure from Continental and subsequent contact with Valyi concerning employment, the suddenness of Kinsley's decision to leave Continental, and the insubstantiality of Kinsley's expressed reason for leaving are all circumstances that point in the direction of some pre-termination discussions between Kinsley and Valyi concerning employment with TPT. In any event, after making slight efforts to ascertain employment prospects elsewhere, principally within an area that would not require moving his residence, Kinsley accepted employment with TPT beginning June 1, 1976, at its Norwalk, Connecticut, facilities. His salary approximated his salary at Continental and has since risen only slightly. He did not replace anyone at TPT.

TPT is a small company engaged in the design, manufacture, and sale of injection blow-molding machinery. Its current principal objective is development of machinery to produce a plastic bottle for beverages under pressure. Its personnel are engaged in development work and promoting opportunities for the sale of its machinery. Kinsley's work for TPT is that of a development engineer. Manufacturing of the machinery is done by a German company. Dr. Valyi organized TPT, of which he and his family are sole stockholders, to carry out development work in injection blow-molding machinery after licensing technology, which he had developed, to National Can Corporation, which in turn sublicensed to TPT.

Prior to accepting TPT's offer, Kinsley's attention was specifically called to the noncompetition covenant by Continental officials, and Valyi also became aware of it. Both Kinsley and Valyi decided, apparently

with advice of counsel, that the covenant would not be judicially enforced.

This suit was filed August 5, 1976, seeking an injunction to bar Kinsley from competitive employment for the balance of the 18-month period of the Continental covenant and an injunction to prevent Kinsley from disclosing trade secrets of Continental. On the hearing of the application for a preliminary injunction, only enforcement of the covenant is sought.

■ Plaintiff has the burden of establishing both a likelihood of success on the merits and a substantial risk of irreparable injury. The parties appear to agree that the applicable law is that of New York, the place where the non-competition covenant was accepted. New York, like most jurisdictions, approaches non-competition covenants cautiously, recognizing that their enforcement interferes to some extent with an individual's freedom to pursue his calling and with the mobility of talent within the economy. Nevertheless New York has recognized that in appropriate circumstances such covenants are enforceable, see *Reed, Roberts Associates, Inc. v. Strauman,* 40 N.Y.2d 303, 386 N.Y.S.2d 677, 353 N.E.2d, 590 (1976); *Purchasing Associates, Inc. v. Weitz,* 13 N.Y.2d 267, 246 N.Y.S.2d 600, 196 N.E.2d 245 (1963); *McCall Co. v. Wright,* 198 N.Y. 143, 91 N.E. 516 (1910), and both New York courts, and federal courts applying New York law, have enforced such covenants by preliminary injunction. *Eastman Kodak Co. v. Powers Film Products,* 189 App.Div. 556, 179 N.Y.S. 325 (1919); *Mixing Equipment Co. v. Philadelphia Gear, Inc.,* 436 F.2d 1308 (3d Cir. 1971). The covenant must be reasonable both in scope and duration, and even then is enforced only when necessary to protect against use or disclosure of trade secrets or other confidential information, or solicitation of customers, or when the employee's services are deemed unique or extraordinary. See *Purchasing Associates, Inc. v. Weitz, supra,* 13 N.Y.2d at 272, 246 N.Y.S.2d 600, 196 N.E.2d 245.

■ The covenant involved in this case is reasonable at least to the extent enforcement is sought in this litigation. Its subject matter is limited to the field of plastic injection blow-molding, a process estimated to be used in the manufacture of less than 15% of plastic containers. The covenant purports to bar employment not only in the development and manufacture of plastic injection blow-molding tools and machinery but also in the distribution and sale of such items and of related services. Defendants suggest these latter areas of employment unreasonably extend the scope of the covenant. There is no occasion to decide whether enforcement could be obtained to bar employment in *any* area of activity other than the development and manufacture of injection blow-making tooling and machinery. Kinsley's employment with TPT is precisely in this area, and even if the covenant could not be enforced to the full extent of all of its terms, it would be appropriate to enforce it to the extent reasonable. See *Karpinski v. Ingrasci,* 28 N.Y.2d 45, 320 N.Y.S.2d 1, 268 N.E.2d 751 (1971).

■ While the geographic scope of the covenant is broad, it is not unreasonably so. *Cf. DeLong Corp. v. Lucas,* 176 F.Supp. 104 (S.D.N.Y.1959), *aff'd,* 278 F.2d 804 (2d Cir. 1960). The evidence indicates that efforts to develop a commercially acceptable plastic beverage bottle by the injection blow-molding process are being pursued in all of the areas designated in the covenant. See *Gillette Co. v. Williams,* 360 F.Supp. 1171 (D.Conn.1971). Nor can it seriously be maintained that the 18-month time period is unreasonable.

The essential dispute between the parties is whether enforcement of the covenant is necessary to protect against use or disclosure of Continental's trade secrets or other confidential information. Defendants resist plaintiff's efforts to satisfy this aspect of the *Purchasing Associates* formulation in two different ways. They challenge whether Continental has any secrets and whether such secrets as may exist could possibly be of any use to TPT.

■ A portion of the injunction hearing was held in closed session with only plaintiff's personnel, Kinsley, and counsel

present. At this session Continental adequately established that it does have protectible secret information concerning the development of its product. Its sensitive information includes various designs for the bottom of the bottle and key determinants such as temperature settings for best results at various stages of the production process. The best witness on this issue was Kinsley himself. Discussing only one aspect of Continental's manufacturing process, he candidly observed, "This whole area is highly secretive."

■ Moreover, it is by no means clear, as TPT appears to contend, that the test for enforcing a non-competition covenant is the same as would apply in obtaining an injunction to bar disclosure of trade secrets in the absence of a non-competition covenant or even an injunction to enforce a covenant not to disclose trade secrets. The non-competition covenant adds something to the protection available to the employer beyond what he would expect from the normal incidents of the employer-employee relationship or from a secrecy agreement. See *Standard Brands v. Zumpe,* 264 F.Supp. 254, 259 (E.D.La.1967); see also *Gillette Co. v. Williams, supra,* 360 F.Supp. at 1177. While an injunction to bar competitive employment is a more drastic remedy than an injunction to bar disclosure of the former employer's secrets, in some circumstances it is an entirely appropriate remedy because of the conscious choices both the employer and employee made when the covenant was given. At that point the employer decided he would make the employee privy to confidential information concerning the employer's product development; if the employee preferred not to give the covenant, the employer could have assigned him elsewhere within the company or terminated his employment. Similarly, the employee decided to accept the opportunity to be involved in the employer's sensitive product development work and signed the covenant which he understood was a requirement of having that opportunity for work of an interesting nature. If he preferred not to be bound by the covenant, he could have declined the opportunity for the specialized work.

While these considerations would not warrant enforcement of covenants in situations where doing so would be unreasonable, they do provide justification for enforcement of otherwise reasonable covenants to protect against disclosure of all confidential information concerning the employer's development of a new product, including some confidential information that might not technically qualify as a trade secret.

Defendants' second line of defense, developed elaborately at the hearing, is that TPT's manufacturing process is so different from the one Continental is using and developing that whatever secrets Kinsley may have learned at Continental would not be of use to TPT. Without reviewing all of the evidence, much of which elaborated distinctions more appropriate to defense of a claim of patent infringement, suffice it to note that there are marked differences in the machinery, materials, and manufacturing technique involved in Continental's and TPT's use of the injection blow-molding process for making a plastic bottle for carbonated beverages. A principal difference is that in the TPT process the plastic parasin that has been injected into the mold is stretched before the air blows it to its ultimate shape, a step that does not occur in the Continental process. Conflicting expert opinions were offered as to whether the secret technology involved in Continental's process is to some extent transferable to the process being used by TPT. I find it unnecessary to resolve that dispute because I do not believe the requirement for enforcement of the covenant is as narrow as that urged by defendants.

■ In essence defendants' view is that when New York law recognizes enforcement of a non-competition covenant only to the extent necessary to protect trade secrets and confidential information, there is an implicit requirement that the former employer's secrets be shown to have ready application in the work being done by the competing employer. Yet in formulating the limitation concerning protection of secrets, the New York courts have said that

non-competition covenants are enforceable to the extent necessary to prevent use or "disclosure" of the former employer's secrets. *Reed, Roberts Associates, Inc. v. Strauman, supra,* 40 N.Y.2d at 308, 386 N.Y. S.2d 677, 353 N.E.2d 590; *Purchasing Associates, Inc. v. Weitz, supra,* 13 N.Y.2d at 272, 246 N.Y.S.2d 600, 196 N.E.2d 245. Of course, the nature of the subsequent employer's work is relevant to determining the risk of disclosure. But I find no requirement in the New York decisions that the first employer's secrets be readily usable by the second employer. It is enough if the second employer's work is sufficiently similar to that of the first employer to make likely the risk of disclosure by the employee in the course of his subsequent employment. "The mere rendition of the service along the lines of [the former employee's] training would almost necessarily impart such knowledge [as he had acquired from the first employer] to some degree." *Eastman Kodak Co. v. Powers Film Products, supra,* 179 N.Y.S. at 330.

■ In this case both Continental and TPT are endeavoring to develop the identical product, a plastic bottle for carbonated beverages. Both are using the injection blow-molding method of manufacture. Whatever variation there may be in techniques, there is a high risk that in the course of working with the TPT process, Kinsley will, perhaps inadvertently, disclose secret aspects of the Continental process. Some feature of the TPT process may prompt him to compare it favorably with a less satisfactory aspect of the Continental process, or vice versa. It is not difficult to imagine numerous opportunities for such inadvertent disclosure.

■ Wholly apart from specific secrets concerning its process, Continental is entitled to protection against disclosure to its competitor of the stage of its product development. With a small number of companies competing vigorously to be among the first to develop a new product with potentially enormous sales, information concerning one company's proximity to success would have considerable value to competi-

tors faced with important decisions as to the rate at which their own development should proceed.

Moreover, disclosure of Continental's secrets to TPT poses a risk for Continental transcending the risk that TPT itself might make some advantageous use of the information. Valyi testified that his agreement with National Can Corp. obligates him to make National Can aware of any information he may develop, acquire, or "come by" in the field of plastic molding. National and Continental are prime competitors, ranking nationally number 3 and 2, respectively, in the production of containers. National Can is very active in the field of injection blow-molding for development of plastic bottles.

All of these circumstances, separately and in combination, indicate the necessity for enforcement of the covenant to protect against disclosure of Continental's secrets.

■ There remains for consideration the equities concerning Kinsley if the covenant is enforced. The evidence is persuasive that Kinsley's employment opportunities will not be unduly limited by enforcement of the covenant. When he left Continental, he expected to find other employment in his field without even having to move his residence, and most of his limited efforts to find other employment were aimed at companies near his home. His willingness to relocate in order to accept satisfactory employment is indicated by his agreeing to work for TPT in Norwalk, Connecticut. Having thus acknowledged a willingness to move, Kinsley is reasonably to be regarded as available for employment anywhere in the country. Plaintiff presented a list of numerous companies, including some of the nation's largest, whose activities include development of plastic containers by processes other than injection blow-molding. While the parties are in dispute as to the types of employment that are open to Kinsley should the covenant be enforced, detailed resolution of that dispute is not necessary at this time. Clearly the covenant will not be enforced as to any employment that is not related to injection blow-molding of plastic

containers. It does not appear that any undue hardship is imposed on Kinsley by having his work as a development engineer concerned with plastic container process development limited to extrusion molding or extrusion blow-molding, the latter being the area of his work with Continental prior to his assignment to Merrimack. And of course he is free to apply his knowledge and skills to plastics production, even though he may prefer to work in the development aspects of the industry.

The preliminary injunction sought at this time precludes Kinsley's employment only with TPT. Whether it would be reasonable to enforce the covenant to bar employment with companies involved with injection blow-molding for products other than beverages to be bottled under pressure need not now be determined. If it should appear that satisfactory employment is available only in such a field, or only in phases of injection blow-molding unrelated to tooling and machinery development, Kinsley can present to the Court his claim to accept such an opportunity, and if Continental were to oppose such employment during the period protected by the covenant, that dispute can be resolved before Kinsley is put to any expense in connection with such a contemplated move.

 A preliminary injunction that interferes with a person's gainful employment should never be ordered unless manifestly warranted. Since the injunction requested in this case would afford much of the relief requested upon trial of the merits, there is a special concern to withhold relief unless it appears from the present record that the trial will be virtually "futile." *Xerox Corp. v. Neises,* 31 A.D.2d 195, 295 N.Y.S.2d 717, 720 (1968). That is the situation in this case. The facts on which this Court relies are almost entirely undisputed. The central circumstance is that Kinsley elected to work in one of the most sensitive areas of his former employer's business, the development of a new product. To minimize the risk that confidential information would be disclosed, his employer obligated him not to work for a competitor for 18

months after termination. Kinsley elected to quit and promptly went to work for a company that is striving to develop the identical product for a major competitor and is headed by a person under contract with the competitor to disclose information acquired in the relevant field. Kinsley's continued employment with TPT presents virtually daily opportunities for disclosure of Continental's secrets concerning the development of its plastic bottle by the injection blow-molding process. The risk of irreparable injury is established, as is Continental's likelihood of success on the merits.

Accordingly, pending final determination of this litigation but in no event beyond 18 months from May 12, 1976, Kinsley is hereby enjoined from remaining in the employ of TPT, and TPT, its officers and employees, are hereby enjoined from continuing Kinsley in the employ of TPT. This preliminary injunction is granted on the condition that plaintiff post within 14 days a bond in the amount of $40,000 to assure payment to Kinsley of his present salary for the remaining portion of the 18-month period plus damages, in the event plaintiff does not ultimately prevail in this litigation.