[Cite as *Dr. Safadi & Assocs., Inc. v. McColley*, 2023-Ohio-1234.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Dr. Safadi & Associates, Inc.        Court of Appeals No.  L-22-1182

    Appellant        Trial Court No.  CI0202202687

v.

Dana M. McColley, C.N.P.        **<u>DECISION AND JUDGMENT</u>**

    Appellee        Decided:  April 14, 2023

* * * * *

Roman Arce and Franceska N. Edinger, for appellant.

Jared J. Lefevre and Charles E. Hatch, for appellee.

* * * * *

**ZMUDA, J.**

**{¶ 1}** This matter is before the court upon the appeal of appellant, Dr. Safadi & Associates, Inc.,[1] challenging the judgment of the Lucas County Court of Common Pleas, denying Dr. Safadi's request for a permanent injunction and granting judgment in favor of appellee, Dana M. McColley, C.N.P. on each of appellant's claims.  For the reasons that follow, we affirm.

---

[1] For ease of discussion, we refer to appellant as "Dr. Safadi."

## I.    Background and Procedural History

{¶ 2} In 2016, McColley accepted a position with Dr. Safadi to provide nurse practitioner services to Dr. Safadi's allergy and immunology practice.  Dr. Safadi is the sole physician in the practice and he employs physician assistants and nurse practitioners to provide almost all of the direct patient care.  McColley had prior experience, working in an emergency room as a nurse and for a family practice as a certified nurse practitioner (C.N.P.).  As part of the employment agreement with Dr. Safadi, the parties negotiated a non-solicitation/non-competition provision, as follows:

> 8.1 The Employee acknowledges and agrees that prior to her employment under this Agreement that she did not have any experience working with patients with allergy or immunology problems and as a result of this employment, will receive training that would enable her to compete with the Employer's practice if this Agreement is terminated. The Employee further acknowledges and agrees that as a result of this employment, she will obtain knowledge of trade secrets, patients, patients' needs, and medical information, et al., which, if used by her subsequent to her termination, could endanger Employer's ability to properly and profitably function. Finally, the Employee acknowledges and agrees that as a result of this employment, she will be afforded the opportunity to meet and ingratiate herself with the Employer's patients, which, in the event of

2.

the termination of this Agreement, would provide her with the opportunity to appropriate goodwill belonging to the Employer. Therefore, in the event of the termination of this Agreement by either party for any reason, the Employee agrees that she will not do any of the following as an employee, agent, partner, member, shareholder, consultant or in any other capacity, for a period of three (3) years from the date of termination within thirty (30) miles of any office operated by the Employer at the time of termination:

8.1.1 Directly or indirectly provide services involving the medical field of allergy or immunology to anyone or solicit, on behalf of anyone, patients with allergy or immunology problems; and

8.1.2 Use or divulge any information obtained while she was an Employee, including but not limited to, names of patients, patients' needs, patients' addresses or other contact information, any medical information whatsoever concerning any patient and/or any and all other knowledge in the nature of "trade secrets" of Employer.

{¶ 3} In early 2022, McColley sought out a new position, intending to leave Dr. Safadi's practice. McColley submitted her resume to The Toledo Clinic on May 2, 2022, after hearing of an opening in the practice of Dr. Christopher Perry, D.O. McColley confided in her friend and coworker, Meghan Simpson, regarding her job search. In a

3.

text exchange, prior to her meeting with Dr. Perry, McColley expressed concern regarding the non-compete provision of her employment agreement.

{¶ 4} Soon after applying, McColley interviewed with Dr. Perry. Dr. Perry is board certified in otorhinolaryngology, commonly referred to as ear, nose, and throat (ENT), and facial plastic surgery. After this meeting, McColley followed up with Terri Gingery, the office manager for human resources at The Toledo Clinic, providing notice of the non-compete provision in her employment agreement with Dr. Safadi. McColley emailed Gingery on May 9, 2022, and provided a copy of Dr. Safadi's non-compete provision. She indicated her attorney wished to "understand how the Toledo Clinic foresees addressing the non-compete provision, because I am directly liable for any breach of the non-compete clause." She requested The Toledo Clinic attorneys contact her attorney to discuss the issue.

{¶ 5} On May 12, 2022, McColley resigned her position with Dr. Safadi and gave the 90-day notice required under the Employment Agreement. However, after discussion, the parties mutually agreed that McColley's last day would be June 8, 2022.

{¶ 6} On May 17, 2022, The Toledo Clinic extended a written offer of employment to McColley. On that same date, Terri Gingery emailed McColley, welcoming her to the practice and providing forms McColley needed to sign as part of the hiring process.

4.

{¶ 7} Following this offer, McColley exchanged text messages with Meghan Simpson regarding the non-compete. On May 23, 2022, McColley told Simpson she needed to decide whether to risk "30-40 grand" in legal fees, should Dr. Safadi pursue legal action, or to re-apply for other jobs. McColley and Simpson discussed the situation, and McColley stated, "Well [Dr.] Perry said that I can't work there and do nothing allergy. [I]t just wouldn't work."

{¶ 8} That same day, McColley notified Dr. Safadi that she had accepted a position with The Toledo Clinic ENT, effective June 20, 2022, working for Dr. Perry.

{¶ 9} Once McColley had given notice to Dr. Safadi, she exchanged text messages with Dr. Perry regarding the non-compete provision. Dr. Perry indicated:

> I haven't heard anything from [Dr.] Safadi yet. Just wanted to give you a heads up though. You should be receiving an employment contract soon. Also, you should receive another contract that spells out what would happen in the worst case scenario in the unlikely event that [Dr.] Safadi sues and wins your case. But the bottom line is that you will not be liable for any damages or attorney fees past this point.

The Toledo Clinic ultimately entered into a written agreement with McColley, providing for a legal defense "of any breach of contract claim brought against you by Dr. Safadi & Associates, Inc. ("Former Employer") with respect to the non-compete and non-solicitation provisions" within Dr. Safadi's Employment Agreement.

5.

{¶ 10} On June 14, 2022, Dr. Safadi filed a verified complaint in the Lucas County Court of Common Pleas, seeking injunctive relief and monetary damages, alleging a breach of the non-competition and non-solicitation agreement by McColley. Dr. Safadi also filed a motion for a temporary restraining order. On June 15, 2022, McColley filed a brief in opposition to a temporary restraining order. The trial court granted the motion for a temporary restraining order on June 16, 2022, temporarily preventing McColley from commencing her employment with The Toledo Clinic ENT.

{¶ 11} On June 30, 2022, McColley filed an answer to the verified complaint, asserting defenses that included a lack of breach of contract, in that the non-competition agreement did not "apply to services in the medical field of otolaryngology (ENT)." Alternatively, McColley asserted that the non-competition agreement "is unreasonable and unenforceable under Ohio law in its scope, length, and geographic restriction."

{¶ 12} On July 1, 2022, the parties agreed to consolidate hearing on the preliminary injunction with a trial on the merits, and the matter was tried to the court pursuant to Civ.R. 65(B)(2). In an order issued July 5, 2022, the trial court denied Dr. Safadi's request for an injunction, dissolved the temporary restraining order issued June 16, 2022, and found in favor of McColley on Dr. Safadi's claims, ordering Dr. Safadi's complaint dismissed. The trial court's order indicated a written opinion would follow.

{¶ 13} On August 4, 2022, the trial court entered an opinion and judgment entry, providing findings of fact and conclusions of law. Among other facts, the trial court

6.

found that Dr. Safadi's practice and Dr. Perry's ENT practice involve separate fields, and that Dr. Safadi and Dr. Perry held different board certifications, Dr. Safadi in pediatrics and allergy and immunology and Dr. Perry in the ENT specialty and in facial plastic surgery. The trial court also determined that there was very little overlap between Dr. Safadi's and Dr. Perry's practice that involved the treatment of allergy patients, and Dr. Perry used different methods and treatments. As a result, Dr. Perry would need to train McColley for six months before she could provide any services to The Toledo Clinic ENT patients.

{¶ 14} After addressing the law governing non-competition agreements, both generally and for medical services, the trial court found the non-competition agreement was unreasonable as to the geographic restriction, without consideration of reasonable terms that would preserve the parties' bargain. The trial court then found that Dr. Safadi failed to demonstrate that McColley breached her Employment Agreement by accepting employment with Dr. Perry and The Toledo Clinic ENT, with no analysis regarding this finding. The trial court entered judgment in favor of McColley as to Dr. Safadi's verified complaint.

{¶ 15} Dr. Safadi filed a timely appeal from the judgment.

## II.    Assignments of Error

{¶ 16} Dr. Safadi argues three assignments of error on appeal:

7.

(1) The trial court erred by depriving [Dr. Safadi] of the benefit of the pre-hire bargain reached with [McColley] because during pre-hire negotiations for an Employment Agreement, [McColley] agreed to a three-year post-employment restriction on her providing "services in the medical field of allergy or immunology," and not just a two-year restriction on her joining a medical practice "that specializes solely in allergy treatment or immunology," as proposed by [McColley] and her attorney during pre-hire negotiations.

(2) The trial court erred by concluding that [Dr. Safadi] does not have a legitimate business interest to protect because: (1) the trial court mistakenly applied the legal standard applicable to restrictive covenants on physicians, (2) [McColley's] employment with the Toledo Clinic entails providing "services involving the medical field of allergy or immunology," using skill, experience, training, and confidential information [McColley] acquired solely by virtue of her employment with [Dr Safadi], and (3) under applicable law, each of the relevant factors to be considered favor enforcement of the non-compete provision agreed to and accepted by [McColley].

(3) The trial court erred: (1) by concluding that the geographic reach of the non-compete provision is unreasonable, and (2) even if the

geographic scope is unreasonable, by failing to determine a lesser

geographic restriction that would protect [Dr. Safadi's] legitimate business

interests without imposing undue hardship on [McColley] or injuring the

public.

### III.    Analysis

{¶ 17} The trial court's ruling was two-fold, finding both an unreasonable non-compete provision and finding that McColley did not breach the Employment Agreement.  While the trial court addressed the reasonableness of the non-compete provision first, before finding that McColley did not breach the agreement, we look to the language of the agreement first, as a threshold matter, to determine whether McColley's subsequent employment with Dr. Perry violated the terms of that agreement.

### A. Breach of Contract

{¶ 18} In the first assignment of error, Dr. Safadi argues that the trial court denied him the benefit of the bargain because McColley agreed to a restriction on her post-employment work in providing "services in the medical field of allergy or immunology." In support, he relies on the negotiations between the parties, and more specifically, Dr. Safadi's rejection of McColley's proposed language that clarified restrictions against joining a practice "that specializes solely in allergy treatment or immunology."

9.

**1. Contract interpretation is subject to de novo review.**

{¶ 19} The first assignment of error presents an issue of contract interpretation. Because this issue presents a question of law, we review the trial court's judgment relative to breach of the contract, applying de novo review. *Amalgamated Transit Union, AFL-CIO, Local 697 v. Toledo Area Regional Transit Authority,* 2020-Ohio-6655, 164 N.E.3d 569, ¶ 25 (6th Dist.), citing *St. Marys v. Auglaize Cty. Bd. of Commrs.,* 115 Ohio St.3d 387, 2007-Ohio-5026, 875 N.E.2d 561, ¶ 38.

{¶ 20} The law governing contract interpretation is well-settled. *Beverage Holdings, LLC v. 5701 Lombardo, LLC,* 159 Ohio St.3d 194, 2019-Ohio-4716, 150 N.E.3d 28, ¶ 13. We must "give effect to the intent of the parties, and we presume that the intent of the parties is reflected in the plain language of the contract." *Id.,* citing *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11. Where the terms within the agreement are clear and unambiguous, we will not "create a new contract by finding an intent not expressed in the clear and unambiguous language of the written contract." *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.,* 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (1999), citing *Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978).

**2. The express terms of the non-compete provision address specialty and not treatment in restricting subsequent employment.**

{¶ 21} In this case, Dr. Safadi focuses on the terms of the non-compete provision, which prohibit McColley from working for a period of three years, within 30 miles of any

10.

of Dr. Safadi's offices, and "directly or indirectly [providing] services involving the medical field of allergy or immunology to anyone[.]" We find no ambiguity in these terms, and therefore, do not consider the parties' prior negotiations to explain these terms. "If no ambiguity appears on the face of the instrument, parol evidence cannot be considered in an effort to demonstrate such an ambiguity." (Citation omitted) *Shifrin v. Forest City Enterprises, Inc*., 64 Ohio St.3d 635, 638, 597 N.E.2d 499 (1992); *see also Williams v. Spitzer Autoworld Canton, L.L.C.,* 122 Ohio St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410, ¶14, quoting *Ed Schory & Sons, Inc. v. Soc. Natl. Bank,* 75 Ohio St.3d 433, 440, 662 N.E.2d 1074 (1996) (integrated, written agreement does not permit evidence of "antecedent understandings and negotiations" to vary or contradict the writing) (additional citation omitted).

{¶ 22} Dr. Safadi argues that the prohibition involving the "medical field of allergy or immunology" bars McColley's employment with Dr. Perry's ENT practice, because the ENT practice sees and treats patients with allergies. As support for this position, Dr. Safadi relies on the texts and emails of McColley and Dr. Perry, voicing concern regarding the non-compete provision, as well as Dr. Perry's testimony of overlapping areas of his ENT practice and Dr. Safadi's allergy and immunotherapy practice. Based on these overlapping areas, and bolstered by evidence of concern, Dr. Safadi argues that, because Dr. Perry's ENT practice also treats allergy patients within his own specialty, McColley's employment with Dr. Perry violates the noncompete

11.

provision.  Our analysis, however, is limited to the terms included in the Employment Agreement.

{¶ 23} In construing the terms based on treatment, Dr. Safadi contends the non-compete language includes *any type of practice* that might provide overlapping care with the "medical field of allergy or immunology."  The agreement, in this case, contains terms that do not address overlapping care, similar fields, or even allergy treatment.  Instead, the clear language limits McColley's employment after separation from directly or indirectly providing her services "involving the *medical field of allergy or immunology*."  Thus, we must consider what is meant by the phrase "provide services involving the medical field of allergy or immunology."[2]

{¶ 24} In considering this phrase, we give common words in the agreement "their ordinary meaning unless manifest absurdity results or unless some other meaning is clear from the face or overall contents of the agreement."  *Cincinnati Ins. Co. v. Anders,* 99 Ohio St.3d 156, 2003-Ohio-3048, 789 N.E.2d 1094, ¶ 34, citing *Alexander* at paragraph two of the syllabus; *Shifrin,* 64 Ohio St.3d at 638, 597 N.E.2d 499.

---

[2] The parties do not address any argument to the "directly or indirectly" language.  The language is not defined within the agreement. "Direct" has been defined as "marked by the absence of an intervening agency, instrumentality, or influence," with "indirect" meaning "not direct, as deviating from a direct line or course." Merriam Webster's Collegiate Dictionary, 10th Ed. (1996), 328; 593.  Applying these meanings to the record, it could be said that McColley provided direct care to Dr. Safadi's patients, while employed there, and Dr. Safadi provided indirect care as the collaborating physician, supervising and reviewing McColley's work.  Because the parties make no attempt to argue the meaning of "directly or indirectly," relative to the applicability of the non-compete provision of the agreement, we need not address such argument in this appeal.

12.

{¶ 25} The phrase "the medical field of allergy and immunology" is not defined within the agreement. However, based on context, the term, "field," means "an area or division of an activity." Merriam Webster's Collegiate Dictionary, 10th Ed. (1996), 433; *see also* Merriam-Webster's Medical Desk Dictionary (1993), 242 (defining "field" as "an area of division of an activity").

{¶ 26} The phrase, "medical field," moreover, specifies the "area or division" of "allergy and immunology." "Allergy" is the "medical practice concerned with allergies." Merriam-Webster's Medical Desk Dictionary at 22. "Immunology" is "a science that deals with the immune system and the cell-mediated and humoral aspects of immunity and immune responses," and an immunologist is "a specialist in immunology." *Id.* at 328.

{¶ 27} Finally, the terms of the non-compete provision prohibit McColley from providing services "***involving*** the medical field of allergy or immunology." The term "involve," as used in the agreement, has been defined as "to have within or as part of itself: include; to require as a necessary accompaniment: entail." Merriam Webster's Collegiate Dictionary at 617.

{¶ 28} Considering the language as a whole, and based on the meaning of the terms comprising the restriction, the phrase "involving the medical field of allergy or immunology" denotes a specialty. A "specialist" is "a medical practitioner who limits his practice to a particular class of patients (as children) or of diseases (as skin diseases) or of

13.

technique (as surgery); *esp*: a physician who is qualified by advanced training and certification by a specialty examining board to so limit his practice." Merriam Webster's Medical Desk Dictionary at 664; *see also* Merriam-Webster's Collegiate Dictionary at 1128 ("specialize" means "to concentrate one's efforts in a special activity, field, or practice").

### 3. Dr. Safadi's practice differs from Dr. Perry's practice.

{¶ 29} In challenging the trial court's judgment, finding no breach of the agreement, Dr. Safadi argues that the non-compete provision bars McColley from treating *allergy patients* within 30 miles, for three years. Much of the testimony cited by Dr. Safadi, in support, demonstrates that a small part of Dr. Perry's ENT practice involves seeing allergy patients and prescribing treatments also prescribed within the sphere of immunotherapy. Had the agreement prohibited McColley from treating allergy patients within 30 miles, for three years, the non-compete provision would have barred McColley's employment from this and numerous other practices that might see and treat allergy patients. McColley recognized this fact in her testimony, stating:

I think it comes down to wording as far as allergy patients. If that was the case, then I wouldn't be able to see patients in the emergency room setting, I wouldn't be able to see patients in Urgent Care settings, because allergy symptoms are a chief complaint there. My family practice, allergies are a very common, chronic condition in which family practice providers

have to manage.  So I think that comes – it's hard to interpret.  This was a complete different specialty, it was in the field – or medical specialty of otolaryngology, it was not specifically the field of allergy and immunology. I did not apply to – I believe at one point in time I did see that Toledo Clinic allergy department was hiring, I never applied or reached out in regards to that position.

{¶ 30} Here, the evidence demonstrated Dr. Perry's practice involves a different specialty, ENT and facial plastic surgery.  Dr. Perry contrasted his practice from Dr. Safadi's practice, denying his practice competes with Dr. Safadi's practice for patients. Dr. Perry explained:

> I would also like to point out that Dr. Safadi's practice is completely different from mine. The education is different, he goes through internal medicine or pediatrics residency, followed by an allergy and immunology fellowship. My training was in, as I said, ENT and facial plastic surgery, and a small part of my training is in allergy. Allergists work in a lot of different areas that I don't work in, they do chemical testing, drug testing. And a part of what an allergist immunologist does is work with the immune system, which, I don't have any – I don't do any work in that arena as well.

Dr. Perry also addressed the training that McColley would require, despite her prior experience with Dr. Safadi.

She has experience as a nurse practitioner, but she's working in a completely different field, as we've established, a completely different field of medicine. And so she's – she's gonna require some extensive training. And so, for me being the owner of my practice, it's an investment, and that's why I'm here, because I'm willing to make the investment in her, I think she's worth the investment. For me to hire her and train her, it's gonna take six months of time, and during that time I pay her salary but she's not making – she's not seeing patients, she's not making any money. So, yeah, ENT is a very broad field, completely different than an allergy and immunology, and so it's going to take a considerable amount of my time to train her, to get her up to speed before she's gonna, in my opinion, be ready to see patients. I have a very high standard in my practice.

{¶ 31} In emphasizing the difference between Dr. Safadi's allergy and immunology practice and his own specialty, Dr. Perry acknowledged that immunology is a small part of his ENT practice. But he also testified that he is not considered an allergist or immunologist, and he refers patients to allergists when the patient has "allergies to chemicals or drugs or foods or if they have immune problems." Because "[t]here's many types of allergies that I don't treat," Dr. Perry testified his allergy patients represent "a small subset of allergic diseases." The allergy testing he performs, moreover, is limited to "inhalant allergies or airborne allergies."

{¶ 32} Dr. Perry testified that he also receives referrals from allergists, and has received referrals from Dr. Safadi's practice in the last five years, including referrals from McColley[3] during her employment with Dr. Safadi. As to the type of case that is referred, Dr. Perry indicated:

> Well, if patients aren't getting better. If they have structural problems with their nose or sinus. If they have a deviated septum or nasal polyps. If they need surgery. If they have ear problems that require surgery or ear tubes or tonsils problems that require surgery. So there's a lot of reasons why allergists refer patients to ENT.

{¶ 33} Despite the differences in Dr. Safadi's and Dr. Perry's respective practices, Dr. Safadi argues McColley's employment would violate the Employment Agreement because she will treat allergy patients in her new employment, in violation of the non-compete provision. Because the non-compete provision contains terms regarding specialty and not treatment, the fact that McColley may treat allergy patients within Dr. Perry's practice is irrelevant. Limiting the restriction as provided in the express terms of the parties' agreement, McColley's employment with Dr. Perry's ENT practice involves

---

[3] Dr. Perry admitted he sought out information on McColley's professional reputation and he noted the quality of her work within patient files, noting "she did a great job of curating her thoughts and providing – a good job of, I think, providing care up to a certain point with patients[.]" Dr. Perry also testified that he did not solicit McColley to apply for the position and he met her for the first time at her employment interview.

17.

providing services within the medical field of ENT, and not the medical field of allergy and immunology.

### 4. The scope of practice for a CNP is limited by statute.

{¶ 34} Dr. Safadi next argues that McColley will be able to use her training and experience from his practice in her new practice with Dr. Perry. Because the non-compete provision is defined in terms of medical specialty and not allergy treatment, this argument presumes that, even though Dr. Perry has an ENT practice, McColley would be permitted to provide patient care in the allergy and immunology field. Based on the clear law governing the scope of practice for a nurse practitioner in Ohio, Dr. Safadi's argument lacks merit.

{¶ 35} In some states, such as Delaware and New Mexico, a nurse practitioner may prescribe, diagnose, and treat patients without a supervising physician, and may even maintain a private practice. *See, e.g.,* 24 Del. Code. Ann. 1902(b) (providing a nurse practitioner is "an expanded scope of nursing licensed as an independent licensed practitioner * * * performing acts of advanced assessment, diagnosing, prescribing, and ordering"); N.M.Stat. Ann. 61-3-23.2 (permitting nurse practitioners in New Mexico to "practice independently and make decisions regarding health care needs of the individual, family or community and carry out health regimens, including the prescription and distribution of dangerous drugs and controlled substances"). Ohio is not one of those states.

18.

{¶ 36} In Ohio, a nurse practitioner's scope of practice is limited by R.C. 4723.43(C) and R.C. 4723.431, which requires a nurse practitioner to operate "in collaboration with one or more physicians" according to the standard care arrangement entered into with each physician. *See also* Ohio Adm.Code Ann. 4723-8-01 *et seq.* (governing scope of practice and requirements for the standard care arrangement). In this case, McColley's standard care arrangement with The Toledo Clinic ENT identified Dr. Perry as the collaborating physician, with the scope of services defined as "primary care & ENT."

{¶ 37} In arguing McColley's employment will require her to treat allergy patients, Dr. Safadi interprets the non-compete provision more broadly than written, beyond services that involve or include or entail the allergy and immunology specialty as provided within the non-compete provision of the agreement. He also ignores the limited scope of McColley's practice, with the scope extending only to practice in collaboration with her supervising physician as specified by her standard care arrangement with Dr. Perry. Aside from Dr. Safadi's testimony that both he and Dr. Perry practice in the field of allergy and immunology, the evidence demonstrates the two doctors have different specialties. McColley's practice, therefore, is necessarily limited to the ENT specialty.

### 5. McColley did not breach the Employment Agreement by taking a position with Dr. Perry's ENT practice.

{¶ 38} Dr. Perry practices in a different medical field than the field of allergy and immunology, and McColley's practice is statutorily limited to the scope defined within

19.

her standard care agreement. Therefore, having carefully considered the language of Dr. Safadi's Employment Agreement, and more specifically, the language of the non-compete provision within that agreement, we find the prohibition applies only to employment with an allergy and immunology practice. While Dr. Safadi seeks to construe the language more broadly, to encompass all allergy and immunology patients, this language was not included in the parties' agreement. We, therefore, find the trial court did not err in finding McColley did not breach the non-compete provision of her Employment Agreement with Dr. Safidi. The first assignment of error, accordingly, is not well-taken.

## B. Reasonableness of the Non-Compete Restrictions

{¶ 39} In the remaining two assignments of error, Dr. Safadi argues the trial court erred in applying an incorrect standard in addressing the reasonableness of the restrictions on competition, and in finding the geographic range of the non-compete provision unreasonable without also addressing a lesser restriction to preserve the parties' agreement. These remaining assignments of error address the relief sought by Dr. Safadi for an alleged breach of the Employment Agreement.

{¶ 40} Dr. Safadi sought permanent, injunctive relief to prevent McColley's employment with Dr. Peters during the three-year period of restriction within the Employment Agreement. To prevail on the claim for a permanent injunction to enforce the non-compete provision, Dr. Safadi needed to "show that [his practice] is likely to

20.

suffer irreparable harm as a result of [McColley's] breach of that clause." *Gimex Properities Corp., Inc. v. Reed,* 2022-Ohio-4771, 205 N.E.3d 1 (6th Dist.), ¶ 63, quoting *Brentlinger Enterprises v. Curran,* 141 Ohio App.3d 640, 646, 752 N.E.2d 994 (10th Dist.2001).  Having found no breach of the Employment Agreement, consideration of the reasonableness of the non-compete provisions is unnecessary.[4]  Dr. Safadi's second and third assignments of error, therefore, are deemed moot.

### IV.    Conclusion

{¶ 41} Having found substantial justice has been done, we affirm the judgment of the Lucas County Court of Common Pleas.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　　　　　　JUDGE
Christine E. Mayle, J.

Gene A. Zmuda, J.　　　　　　　　　　　　　　　JUDGE
CONCUR.

　　　　　　　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　　　　　　JUDGE

---

[4] We further note that consideration of the reasonableness of the terms is a fact-intensive review, with validity determined in each case "on its own facts." *Raimonde v. Van Vlerah,* 42 Ohio St.2d 21, 25, 325 N.E.2d 544 (1975).  The facts of this case do not merit consideration of remedy without breach.

21.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.